In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-391 CR


____________________



KATRINA FERGERSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 87912






MEMORANDUM OPINION


 A jury convicted Katrina Fergerson of Capital Murder. Fergerson's indictment
alleged, in pertinent part, that on or about November 24, 2002, she "intentionally and
knowingly cause[d] the death of an individual, namely, [B.J.F.], hereafter styled the
Complainant, by failing to remove Complainant from a toilet containing water, and at the
time of Complainant's death, Complainant was an individual under six (6) years of age[.]" 
The salient facts, which are not in dispute, indicate that Fergerson gave birth to a baby in the
bathroom of a private residence. Fergerson gave birth to the infant, [B.J.F.], while
apparently seated on the toilet. When Fergerson emerged from the bathroom, she informed
one of her friends that she believed she had miscarried. The friend, Carolyn Walker, ran to
the bathroom and observed an infant in the toilet, still in a fetal position, with its head toward
the bottom of the bowl. Walker also observed that the infant's umbilical cord "was wrapped
around the neck," and the placenta had been deposited into a plastic bag and placed on the
side of the toilet. Emergency medical personnel were called to the scene and found the
infant's body still inside the toilet bowl. Subsequent efforts to resuscitate the infant proved
futile and the infant was pronounced dead at the hospital. 

 The State's theory of prosecution, as evidenced by the indictment language, was that
Fergerson's failure to rescue the infant from the toilet and/or seek help with greater alacrity
and diligence was intentional because Fergerson, already a mother of three other children,
had been unhappy about her fourth pregnancy from its inception. Apart from acquittal, the
defense focused its trial strategy toward securing a jury-verdict on a lesser culpable mental
state. By its verdict, the jury rejected the four lesser-included offenses submitted to it in the
trial court's instructions. As the State did not seek the death penalty, Fergerson received the
only other possible punishment: life in the Texas Department of Criminal Justice -
Correctional Institutions Division. See Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01,
sec. 12.31, 1993 Tex. Gen. Laws 3586, 3602 (amended 2005) (current version at TEX. PEN.
CODE ANN. § 12.31 (Vernon Supp. 2005)). 

 Fergerson raises four issues for our consideration, viz: 

 1. The jury charge as to offense of capital murder was so misleading as to
cause egregious harm to appellant as a matter of law.


 2. Reversible error occurred when the court admitted irrelevant evidence that
appellant's parental rights were terminated.


 3. Reversible error occurred when the court admitted prejudicial evidence that
appellant's parental rights were terminated.


 4. The trial court abused its discretion in excluding the testimony of
appellant's expert witness, Dr. Edward Gripon, concerning the effects of
alcohol on appellant.


 Fergerson's first issue complaining of jury-charge error focuses on the fact that the
trial court provided the jury with statutory definitions of "murder" under both Tex. Pen.
Code Ann. § 19.02(b)(1), (b)(2) (Vernon 2003), while the Penal Code limits conviction for
capital murder to "murder as defined under Section 19.02(b)(1) ." See Tex. Pen. Code Ann.
§ 19.03(a) (Vernon Supp. 2005). In the trial court's charge, the abstract definitions begin by
defining "Capital Murder" as follows: "A person commits Capital Murder if he commits
murder and the individual killed is under six (6) years of age." Additional definitions follow
on separate pages, with the definitions of "intentionally," "knowingly," "injury to a child"
(by intentional or knowing conduct, and by reckless conduct), and "manslaughter" appearing
immediately before the separate "murder" definitions.

 "Murder," taken from section 19.02(b)(2) of the Penal Code, is next defined and
reads: "A person commits an offense of murder if he intends to cause serious bodily injury
and commits an act clearly dangerous to human life that caused the death of an individual."
This is not the definition of "murder" that authorizes conviction for capital murder under
section 19.03(a). The second "murder" definition follows, and is taken from section
19.02(b)(1) of the Penal Code which reads: "A person commits the offense of murder if he
intentionally or knowingly causes the death of an individual." This "intentional/knowing
murder" is the only type that will support a conviction for capital murder under section
19.03(a). 

 Fergerson argues that, as contained in the jury instructions, the two "murder"
definitions allowed the jury to convict Fergerson of capital murder by two different means:
(1) by causing the death of a person under six years of age while intending only to cause
serious bodily injury but committing an act clearly dangerous to human life that caused the
death of the person under six years of age, or (2) by intentionally or knowingly causing the
death of a person under six years of age. In its reply, the State appears to argue that appellate
review on this issue was not preserved as Fergerson's trial counsel failed to lodge any
objection to the jury instructions. The State's position is incorrect under the continued
viability of the holding in Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984) (op. on
reh'g). Recently, the Court of Criminal Appeals reiterated the standard for reviewing claims
of jury-charge error in Ex parte Smith, 185 S.W.3d 455 (Tex. Crim. App. 2006), viz:

 The usual method by which we assess purported jury instruction or
charge errors is set out in Almanza v. State. The Almanza standard applies
both on direct appeal and on the review of habeas corpus applications. 
Almanza applies to federal constitutional errors contained within the jury
charge. Under that familiar standard, we must decide:

 1. Was there error in the jury charge?

 2. If so, "the next step is to make an evidentiary review . . . as
well as a review of any other part of the record as a whole which
may illuminate the actual, not just theoretical, harm to the
accused." If the defendant failed to object to the jury charge, he
must show that the error caused him such egregious harm that he
did not have "a fair and impartial trial." 


Id. at 463-64 (footnotes omitted). Thus, should error be found in the instructions to the jury,
Fergerson's failure to object does not forfeit appellate review of the error but does require
the record to show the error resulted in egregious harm to Fergerson before reversal of the
conviction is necessitated.

 A closer examination of the entire jury charge in the instant case indicates that the
only offense to which the "clearly dangerous to human life" murder definition was applied
was the lesser-included "murder" charge instructed for the jury's consideration should it have
acquitted Fergerson of the capital murder charge. Additionally, the only offense to which
the "intentional/knowing murder" definition was applied was the capital murder charge. As
we noted in Thompson v. State, 12 S.W.3d 915 (Tex. App.--Beaumont 2000, pet. ref'd):

 It is the application paragraph of a jury charge which authorizes
conviction, and an abstract charge on a theory of law which is not applied to
the facts is insufficient to bring that theory before the jury. McFarland v.
State, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996), cert. denied, [519] U.S.
[1119], 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). An abstract statement of the
law that goes beyond the allegations in the indictment ordinarily will not
present reversible error because ordinarily [sic] such expansions on the
indictment's allegations are effectively restricted by the charge's application
of the law to the facts, which limits the jury's deliberations to the allegations
in the indictment supported by evidence. Sandig v. State, 580 S.W.2d 584, 586
(Tex. Crim. App. 1979).


Id. at 921-22 (quoting Ramirez v. State, 967S.W.2d 919, 922 (Tex. App.--Beaumont 1998, 


no pet.). 


 In the instant case, the abstract definitions in question tracked the Texas Penal Code
provisions. Thereafter, the application paragraphs for capital murder and for the lesser-included murder offense clearly limited the jury's consideration of the two murder definitions
to only the proper murder charge (capital versus lesser-included) in question. Considered in
its entirety, the jury instructions are not erroneous as they authorized the jury to convict
Fergerson of capital murder only if it found she committed "intentional/knowing murder" as
defined under section 19.02(b)(1). See Tex. Pen. Code Ann. § 19.03(a). Finding no jury-charge error, we overrule issue one. 

 Fergerson argues issues two and three together. Fergerson contends the trial court
erred in permitting the State to introduce the judgment terminating her parental rights to three
of her children in that said judgment was not relevant (issue two) and was more prejudicial
than probative (issue three). At the outset, we agree with the State that Fergerson's objection
at trial to the judgment, State's Exhibit 17, did not include a complaint that the judgment was
prejudicial. As such, Fergerson has not properly preserved her complaint under issue three
for appellate review. See Tex. R. App. P. 33.1(a). Issue three is overruled. 

 Fergerson argued to the trial court that the termination judgment was not relevant
because the termination of her parental rights was adjudicated subsequent to the offense date
of the capital murder charge. She also argues this before us. Her appellate argument also
alludes to trial court error in violation of Tex. R. Evid. 404(b). 

 "Under Rule 401, evidence is relevant if it makes the existence of a fact that is of
consequence to the determination of the action more probable than it would be without the
evidence." Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Under Tex. R.
Evid. 402, "there is a presumption of admissibility of relevant evidence." Id. "The
admissibility of evidence is within the discretion of the trial court and will not be overturned
absent an abuse of discretion." Id. at 627. So long "as the trial court's ruling was within the
zone of reasonable disagreement," an appellate court should uphold it. Id. (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). 

 One long-recognized basis for finding evidence relevant is where a party proffers it
in rebuttal of a defensive theory such as mistake or accident. Id. at 626; see also Tex. R.
Evid. 404(b). As noted above, the issue for the jury to decide was whether Fergerson's
actions (or inactions) were intentional/knowing, or reckless, or done with criminal
negligence. Initially, we reject Fergerson's argument that because the termination judgment
was entered after the offense date of the instant charge the termination judgment had no
relevance to Fergerson's criminal prosecution. An extraneous offense/bad act that takes
place subsequent to the offense for which a defendant is on trial does not make the
extraneous offense/bad act inadmissible per se. See Santellan v. State, 939 S.W.2d 155, 168
(Tex. Crim. App. 1997) (holding evidence of "abuse of a corpse" which followed defendant's
murder of the victim was admissible as it was relevant to the State's proof of the elements
of the capital murder charge for which defendant was on trial). 

 Furthermore, State's Exhibit 17 was introduced by the State after Fergerson had
testified that the infant's death on the night in question was not the result of any intentional
or knowing conduct on Fergerson's part. The termination judgment contains findings by the
trial judge that Fergerson, inter alia, "knowingly placed or knowingly allowed the child(ren)
to remain in conditions or surroundings which endanger the physical or emotional well-being
of the child(ren)[.]" (Emphasis added). A judicial finding that Fergerson "knowingly" placed
or allowed her other children to remain in conditions dangerous to their physical or emotional
well-being at least arguably makes it more probable that Fergerson's acts or omissions on the
night in question were done either intentionally or knowingly. As such, State's Exhibit 17
was relevant under Rule 401, and had relevance apart from mere proof of character
conformity in compliance with Rule 404(b). See Martin v. State, 173 S.W.3d 463, 466 (Tex.
Crim. App. 2005). The trial court's decision to admit the termination judgment was within
the zone of reasonable disagreement, therefore no abuse of discretion occurred. Moses, 105
S.W.3d at 627; Santellan, 939 S.W.2d at 169. Issue two is overruled.

 Fergerson's final issue complains of the trial court's exclusion of the testimony of her
expert witness, Dr. Edward Gripon. At the State's request, the trial court conducted a
hearing outside the presence of the jury apparently to determine the nature of Dr. Gripon's
testimony. The State elicited the fact that Dr. Gripon had met with Fergerson and had
reviewed Fergerson's records as to the medical treatment she received subsequent to the birth
of [B.J.F.]. From this information, Dr. Gripon was prepared to testify as to the effect of
Fergerson's consumption of a large amount of alcohol on the day of the offense with regard
to "her ability to respond both physically as well as verbally." When asked if he would
testify as to Fergerson's remorsefulness, Dr. Gripon replied: 

 A. Well, I can state what I saw when I visited with her in August of
this year. I cannot tell you anything about the day of the offense because I
wasn't there other than what impact any substance used might have had on a
person's appearance to a person without substantial training in that area.


 Counsel for Fergerson asked no questions of Dr. Gripon. The State objected to the
doctor's testimony on the ground that intoxication is not a defense to criminal activity, and
Dr. Gripon's testimony would be an attempt to circumvent the law in this area. Fergerson's
trial counsel responded in the following manner: 

 [Trial Counsel]: Your Honor, we don't feel that the doctor testifying
about the effects of alcohol in any way raises a defense but explains the
condition and the blood alcohol level of Ms. Fergerson on the night in
question. There's been extensive testimony as to her emotions, her reactions,
her [affect] - - that flat [affect] she had to everyone; and he can render an
expert opinion as to the effect of alcohol on that. He's not going to say in any
way that it's a defense to any of her actions. It's merely [an] explanation we
feel would aid and assist the jury.


The trial court sustained the State's objection. Dr. Gripon was thereafter released as a
witness at Fergerson's request. Fergerson offered no further details or any specific facts
concerning Dr. Gripon's expert opinion testimony as to effects, if any, of alcohol ingestion
on Fergerson's appearance on the night in question. 

 Although Texas does not recognize the doctrine of "diminished capacity" as an
affirmative defense, i.e., a lesser form of the defense of insanity, under certain circumstances,
a defendant may present relevant evidence for the jury to consider in an attempt to negate the
mens rea element alleged in the indictment. See Jackson v. State, 160 S.W.3d 568, 573-74
(Tex. Crim. App. 2005). However, because the record before us indicates that Fergerson
failed to preserve this issue for appellate review, we must overrule it. Tex. R. Evid.
103(a)(2) provides that error may not be predicated upon a ruling which excludes evidence
unless a substantial right of a party is affected and the substance of the evidence was made
known to the court by offer of proof or was apparent from the context within which questions
were asked. An offer of proof may be in the form of questions and answers, or by a concise
statement by counsel. See Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (citing
Love v. State, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993)). The Court in Warner explained
further:

 An offer of proof to be accomplished by counsel's concise statement must
include a reasonably specific summary of the evidence offered and must state
the relevance of the evidence unless the relevance is apparent, so that the court
can determine whether the evidence is relevant and admissible. Love v. State,
861 S.W.2d at 901; 1 J. McLaughlin, et al., Weinstein's Federal Evidence §
103.20[2] (2nd ed. 1997); 1 J. Strong, et al, McCormick on Evidence § 51 (4th
ed. 1992); Annot., Ruling on Offer of Proof as Error, 89 A.L.R.2d 279, 282
(1963); 88 C.J.S. Trial § 80 (1955). 


Warner, 969 S.W.2d at 2. In the instant case, there is no adequate offer of proof following
the very general responses given by Dr. Gripon during questioning by the State. Trial
counsel's response was merely an attempt to reply to the State's objection, and did not
provide a "reasonably specific summary" of what Dr. Gripon's expert testimony would
contain. We therefore overrule issue four. The judgment of the trial court is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on April 19, 2006

Opinion Delivered July 26, 2006

Do not publish


Before Gaultney, Kreger and Horton, JJ.