In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00083-CR


______________________________




JIMMY LYNN FRANKLIN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 06-0147X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jimmy Lynn Franklin was convicted by a jury on two counts of aggravated sexual assault and
three counts of sexual performance by a child. The jury assessed punishment at various levels for
the different offenses, ranging from thirty years' to five years' imprisonment. 

 On appeal, Franklin contends: (1) the evidence is legally and factually insufficient to support
the conviction; (2) the court erred by excluding material cross-examination evidence; and (3) he
received ineffective assistance of counsel at trial. We affirm the judgment of the trial court. 

I. Background 

 Franklin, his wife, the wife's two daughters, and Franklin's daughter and son lived together. 
It appears that all of the children (except for one of the wife's daughters) were teenagers, between
thirteen and fifteen years of age. Franklin was accused of convincing his daughter and one of his
stepdaughters to make two sexually suggestive videotapes (not in evidence) and of having his son
place a video camera in the attic pointed at one girl's bed (in evidence). He was also accused of
engaging in oral sex with one of his stepdaughters. 

II. Evidence

 The main argument about evidentiary sufficiency involves contradictions and conflicts in the
State's witnesses' testimony. The evidence shows that Franklin is disabled, with an electronic pain-controlling implant in his spine, and that he uses narcotics as painkillers. There is some testimony
that thirteen-year-old stepdaughter S. used some of his drugs at various times, as well as using
alcohol and marihuana, and inhaling various fumes.

 The alleged sex act was with S. She testified that Franklin had placed his mouth on her sex
organ and that she had placed her mouth on his sex organ. She also testified that she and
stepsister K. made a video of K. holding a vibrator to S.'s genitals and another tape of S. attempting
to perform oral sex on K. But, when taken to a Child Advocacy Center (CAC) and interviewed
about her outcry, S. said nothing about engaging in oral sex with Franklin and also did not mention
it to the investigating officer. In response to questions asked at the CAC, S. specifically denied that
she had ever placed Franklin's penis in her mouth. 

 W., Franklin's son, testified that Franklin asked him to place a video camera in the attic. W.
admitted on cross-examination that he had told Franklin's counsel that he made the videotape on his
own, not because of any request by Franklin.

 K. testified that Franklin asked her to videotape S. masturbating, that she and S. had "huffed"
gas before making the video, and that Franklin asked her to make a second video with S., showing S.
having oral sex with K. But, K. testified on cross-examination that she had told the CAC interviewer
about the first videotape, but did not mention a second tape, that S. had never done anything of a
sexual nature to her, and that she had told Franklin's counsel that she lied to the police in her
statement. 

 B.H. (a student, friend of W., and acquaintance of the girls) testified that (soon after the
allegations were made) he asked S. why she had made those allegations, and she told him it was
because Franklin was "not gonna tell me who I can and can't hang out with," specifically, that she
was angry with Franklin for trying to keep her from seeing her friend M. B.H. testified that he told
S., "[Y]ou know, he can get into a lot of trouble for all of this that you are saying and she said, I don't
care, as long as I get to be with M." He also testified that he had seen S. use marihuana at home and
that she spent a lot of time talking about other types of drugs she had taken.

 Judy Lemons (S.'s grandmother) testified that, just before S.'s interview with the CAC, S. told
her that, if she told the truth, she would "go to juvie."

 The evidence shows that, before any of this began, Franklin allowed S. and K. to smoke and
supplied them cigarettes, and had twice allowed K. (the older girl) to drink alcoholic beverages. The
two videos made by K. and S. were not in evidence, and their testimony indicated that they were
made so that Franklin could use them as blackmail to keep S. and K. from telling his wife about what
he was permitting them to do. The third video, made from the ceiling by W., was before the jury.

 Franklin's wife, Gina, testified that S. had been spending time with a particular group of
friends with whom she had been getting into trouble and that Franklin had issued an ultimatum
ordering her to separate from those friends, that S. had drug problems, and that Franklin threatened
to have S. tested for drugs. (1) Gina testified that S. evidently heard Franklin threaten to take away her
friends and do drug tests and that S. was furious. Gina testified that S. asked her to leave Franklin
then, and Gina refused. The next day S. went to a school counselor and made these allegations
against Franklin. 

 Franklin testified that he had never given the children either cigarettes or alcohol, but that
S. had taken beer from a refrigerator while they had lived in Huntsville, where they resided before
moving to Marshall. In connection with the video from the girls' room, he testified that he heard a
loud crack and went into their room, that W. was in the attic space above their room, and that W. told
him he had a way to catch them "huffing" or smoking. Franklin testified he told W. to come out of
the attic, and then went over to the crawl space that he would be coming out from. Franklin testified
that he asked W. where the camera was and that W. told him he had left it in the ceiling. Franklin
testified that he told W. to go get it and that he went back downstairs to watch over the smallest
child. According to Franklin, he knew nothing about the tape until the prosecution commenced. 
Finally, Franklin denied all allegations that he had engaged in any sexual touching with S. 

 Franklin also testified he had found a few of his pills missing, and then just before the
argument with Gina when he demanded that S. and K. be drug tested, he had found more missing. 

III. Sufficiency of the Evidence 

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a factual sufficiency
review, we are to afford "due deference" to a jury's determinations. Marshall, 210 S.W.3d at 625.

 "Although an appellate court reviewing factual sufficiency has the ability to second-guess
the jury to a limited degree, the review should still be deferential, with a high level of skepticism
about the jury's verdict required before a reversal can occur." Roberts, 220 S.W.3d 521. Franklin does not allege that the evidence fails to prove the elements of each offense and does
not focus his argument on any particular one of the five counts involved in this prosecution. Instead,
he contends that the evidence is insufficient to allow a rational finder of fact to find guilt beyond a
reasonable doubt because of the inconsistent statements, contradictions, and admissions made by the
State's witnesses. Specifically, he complains that S.'s testimony was untrustworthy since she had
admitted to both her grandmother and a schoolmate that her allegations against Franklin were untrue. 
Franklin also points out that W. admitted he had told Franklin's trial counsel that Franklin had
nothing to do with the attic videotape.

 Even though the record shows that there are discrepancies in the testimony and that S.'s and
W.'s testimonies were particularly contrary to statements they had previously made out of court, the
question before us is whether any of those discrepancies or inconsistencies is of such overwhelming
strength to allow us to set aside the jury's determination of guilt. It is the province of the jury to
judge the credibility of witnesses and the weight to be given their testimony, and reconciliation of
conflicts in the evidence is within the exclusive province of the jury. Margraves v. State, 34 S.W.3d
912, 919 (Tex. Crim. App. 2000). The jury may choose to believe some testimony and disbelieve
other testimony. Id.

 The jury made its determination after being confronted with these conflicts and
inconsistencies in the testimony. The testimony of the witnesses was subjected to cross-examination
and the jury's scrutiny. Under these facts, we will not intrude into that determination. The points
of error are overruled.

IV. Cross-Examination Denied?

 Franklin next contends that the court committed reversible error by denying him the
opportunity to cross-examine one of the complaining witnesses about her motive for making false
accusations against him. He complains because he was not permitted to introduce evidence that S.
was angry at Franklin (and thus had fabricated the allegations) because Franklin had forbade her
from seeing M., with whom he contends S. was having a homosexual relationship. The specific
complaint was that he was not allowed to introduce evidence that the relationship was not merely
that of a friend, but was sexual in nature, and a hearing outside the presence of the jury was
conducted, expressly pursuant to Rule 412 of the Texas Rules of Evidence. See Tex. R. Evid. 412. 
 The argument is: proof of a sexual relationship makes it much more likely that S. would
have an emotional meltdown and lash out by fabricating such lies against the person who forbade
her to see a lover than against a person who forbade her to see a friend. Thus, the efficacy of
Franklin's cross-examination was severely damaged by the court's decision not to allow that matter
to be presented to the jury. 

 The court noted that no evidence of the existence of a homosexual relationship had been
presented and concluded that it was more prejudicial than probative, and refused to allow counsel
to question S. on that topic. 

 Neither at trial nor on appeal has the constitutional dimension of confrontation and cross-examination been raised. Thus, we restrict our review to the admissibility of the evidence under the
Texas Rules of Evidence. (2)

 At trial, Franklin proffered the cross-examination of S. for the purpose of testing her
credibility, by seeking to show motive for lying. Several Rules of Evidence mention or allude to
testing a witness' credibility or to impeaching the witness. See, e.g., Tex. R. Evid. 607 ("The
credibility of a witness may be attacked by any party . . . ."), 611(b) ("A witness may be
cross-examined on any matter relevant to any issue in the case, including credibility."). During the
argument to the trial court, a discussion of Rule 609 concerning the admissibility of previous sexual
conduct took place. The court evidently accepted counsel's position that the exception applied, as
it related to the motive or bias of the alleged victim, but then concluded that its probative value did
not outweigh the danger of unfair prejudice. See Tex. R. Evid. 412(b)(2)(C), (b)(3), 609.

 A trial court has considerable discretion in determining whether to exclude or admit
evidence. See Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh'g). 
Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude
evidence. See Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under this standard,
we will uphold a trial court's evidentiary ruling so long as the ruling is within the "zone of reasonable
disagreement." Id.; State v. Dudley, 223 S.W.3d 717, 724 (Tex. App.--Tyler 2007, no pet.).

 The State argues that this issue has not been preserved for review because counsel did not
make an adequate offer of proof, citing Kennedy v. State, 184 S.W.3d 309, 315 (Tex.
App.--Texarkana 2005, pet. ref'd). To preserve for review a ruling on evidence, the record must
contain a timely, specific objection and, if the ruling excludes evidence, an offer of proof. See Tex.
R. Evid. 103(a); Tex. R. App. P. 33.1(a). As we recognized there, Rule 103 does allow a proponent
of the evidence in question to forego an offer of proof when the substance of the excluded evidence
was apparent from the context. Tex. R. Evid. 103(a)(2). Error can be preserved either by an offer
of proof in question-and-answer form or in the form of a concise statement by counsel. Tex. R.
Evid. 103(b); Love v. State, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). If an offer of proof is
made in the form of a concise statement, the concise statement must include a reasonably specific
summary of the proposed testimony. Love, 861 S.W.2d at 901; Harty v. State, 229 S.W.3d 849, 854
(Tex. App.--Texarkana 2007, no pet.).

 Franklin made no offer of proof indicating S.'s answers to the questions, and unlike the
situations where the questions have been found sufficient to preserve the claimed error, in this case
the substance of the evidence is not apparent from the context within which the questions were
asked. Compare Fairow v. State, 943 S.W.2d 895, 905 (Tex. Crim. App. 1997). 

 We reiterate, to preserve error, the substance of the excluded evidence must be shown by
offer of proof unless it is apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2);
Tex. R. App. P. 33.2. In this case, we know what the question would have been. What we do not
know is what the answer would have been. Franklin did not proffer any other evidence that S. was
a lesbian or that she and M. were lovers, and there is no offer of proof to show that such evidence
could have been elicited. 

 We find this issue has not been preserved for our consideration on appeal. 

V. Ineffective Assistance of Counsel

 Franklin next contends that he received ineffective assistance of counsel both at the
guilt/innocence and the punishment stages of trial. The standard of testing claims of ineffective
assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this
claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's
representation fell below an objective standard of reasonableness and (2) that the deficient
performance prejudiced the defense. Strickland, 466 U.S. at 689; Rosales v. State, 4 S.W.3d 228,
231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's
representation fell below the standard of prevailing professional norms and that there is a reasonable
probability that, but for the attorney's deficiency, the result of the trial would have been different. 
Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must
prove that counsel's representation so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686. 

 Franklin complains that counsel was ineffective because he did not ask specific questions,
because he did not record or take a statement from his son W. about lying to the police and the CAC,
by failing to call Franklin's sister to refute certain testimony about the video, and other unspecified
matters. 

 Where an appellate record is silent as to why trial counsel failed to take certain actions, the
appellant has failed to rebut the presumption that trial counsel's decision was in some way--be it
conceivable or not--reasonable. See Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). 
In this case, there is no record at any level to indicate why counsel chose to take or declined to take
any of these actions. (3) The ineffectiveness of counsel is a matter that must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. Smith v. State,
51 S.W.3d 806, 812 (Tex. App.--Texarkana 2001, no pet.). In the absence of such a record, and in
the lack of anything that would indicate such completely ineffective assistance as could be shown
without such a record, we overrule the point of error.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: January 11, 2008 

Date Decided: February 20, 2008


Do Not Publish



1. There was also testimony that police had called the Franklins to come and get both S. and
K., who had been found with some boys in a car drinking, and that S. had gotten into trouble at
school while hanging around with her friend M.
2. The Texas Court of Criminal Appeals has made it clear that an objection or argument that
evidence is admissible to attack a witness' credibility may involve both the constitutional right of
confrontation or evidentiary rules. Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). 
In order to assert the confrontation objection, it is necessary that a party clearly articulate that the
Confrontation Clause demanded admission of the evidence to allow the trial court to rule on the
issue. Id. at 179-80. In failing to present such an argument or objection to the trial court, the
confrontation issue was not preserved for appeal. See Perry v. State, 236 S.W.3d 859 (Tex.
App.--Texarkana 2007, no pet.).
3. Under normal circumstances, the record on direct appeal will not be sufficient to show that
counsel's representation was so deficient and so lacking in tactical or strategic decision-making as
to overcome the presumption that counsel's conduct was reasonable and professional. Mallett v.
State, 65 S.W.3d 59, 65 (Tex. Crim. App. 2001). In addressing this reality, the Texas Court of
Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective
assistance of counsel because the record almost never speaks to the strategic reasons that trial
counsel may have considered. The proper procedure for raising this claim is therefore almost always
habeas corpus. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); Aldrich v. State,
104 S.W.3d 890, 896 (Tex. Crim. App. 2003).