

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00083-CR
_____

JIMMY LYNN FRANKLIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 06-0147X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Jimmy Lynn Franklin was convicted by a jury on two counts of aggravated sexual assault and three counts of sexual performance by a child. The jury assessed punishment at various levels for the different offenses, ranging from thirty years' to five years' imprisonment.

On appeal, Franklin contends: (1) the evidence is legally and factually insufficient to support the conviction; (2) the court erred by excluding material cross-examination evidence; and (3) he received ineffective assistance of counsel at trial. We affirm the judgment of the trial court.

## I.    Background

Franklin, his wife, the wife's two daughters, and Franklin's daughter and son lived together. It appears that all of the children (except for one of the wife's daughters) were teenagers, between thirteen and fifteen years of age. Franklin was accused of convincing his daughter and one of his stepdaughters to make two sexually suggestive videotapes (not in evidence) and of having his son place a video camera in the attic pointed at one girl's bed (in evidence). He was also accused of engaging in oral sex with one of his stepdaughters.

## II.    Evidence

The main argument about evidentiary sufficiency involves contradictions and conflicts in the State's witnesses' testimony. The evidence shows that Franklin is disabled, with an electronic pain-controlling implant in his spine, and that he uses narcotics as painkillers. There is some testimony

2

that thirteen-year-old stepdaughter S. used some of his drugs at various times, as well as using alcohol and marihuana, and inhaling various fumes.

The alleged sex act was with S. She testified that Franklin had placed his mouth on her sex organ and that she had placed her mouth on his sex organ. She also testified that she and stepsister K. made a video of K. holding a vibrator to S.'s genitals and another tape of S. attempting to perform oral sex on K. But, when taken to a Child Advocacy Center (CAC) and interviewed about her outcry, S. said nothing about engaging in oral sex with Franklin and also did not mention it to the investigating officer. In response to questions asked at the CAC, S. specifically denied that she had ever placed Franklin's penis in her mouth.

W., Franklin's son, testified that Franklin asked him to place a video camera in the attic. W. admitted on cross-examination that he had told Franklin's counsel that he made the videotape on his own, not because of any request by Franklin.

K. testified that Franklin asked her to videotape S. masturbating, that she and S. had "huffed" gas before making the video, and that Franklin asked her to make a second video with S., showing S. having oral sex with K. But, K. testified on cross-examination that she had told the CAC interviewer about the first videotape, but did not mention a second tape, that S. had never done anything of a sexual nature to her, and that she had told Franklin's counsel that she lied to the police in her statement.

3

B.H. (a student, friend of W., and acquaintance of the girls) testified that (soon after the allegations were made) he asked S. why she had made those allegations, and she told him it was because Franklin was "not gonna tell me who I can and can't hang out with," specifically, that she was angry with Franklin for trying to keep her from seeing her friend M. B.H. testified that he told S., "[Y]ou know, he can get into a lot of trouble for all of this that you are saying and she said, I don't care, as long as I get to be with M." He also testified that he had seen S. use marihuana at home and that she spent a lot of time talking about other types of drugs she had taken.

Judy Lemons (S.'s grandmother) testified that, just before S.'s interview with the CAC, S. told her that, if she told the truth, she would "go to juvie."

The evidence shows that, before any of this began, Franklin allowed S. and K. to smoke and supplied them cigarettes, and had twice allowed K. (the older girl) to drink alcoholic beverages. The two videos made by K. and S. were not in evidence, and their testimony indicated that they were made so that Franklin could use them as blackmail to keep S. and K. from telling his wife about what he was permitting them to do. The third video, made from the ceiling by W., was before the jury.

Franklin's wife, Gina, testified that S. had been spending time with a particular group of friends with whom she had been getting into trouble and that Franklin had issued an ultimatum ordering her to separate from those friends, that S. had drug problems, and that Franklin threatened to have S. tested for drugs.[1] Gina testified that S. evidently heard Franklin threaten to take away her

_____

[1]There was also testimony that police had called the Franklins to come and get both S. and K., who had been found with some boys in a car drinking, and that S. had gotten into trouble at

4

friends and do drug tests and that S. was furious. Gina testified that S. asked her to leave Franklin then, and Gina refused. The next day S. went to a school counselor and made these allegations against Franklin.

Franklin testified that he had never given the children either cigarettes or alcohol, but that S. had taken beer from a refrigerator while they had lived in Huntsville, where they resided before moving to Marshall. In connection with the video from the girls' room, he testified that he heard a loud crack and went into their room, that W. was in the attic space above their room, and that W. told him he had a way to catch them "huffing" or smoking. Franklin testified he told W. to come out of the attic, and then went over to the crawl space that he would be coming out from. Franklin testified that he asked W. where the camera was and that W. told him he had left it in the ceiling. Franklin testified that he told W. to go get it and that he went back downstairs to watch over the smallest child. According to Franklin, he knew nothing about the tape until the prosecution commenced. Finally, Franklin denied all allegations that he had engaged in any sexual touching with S.

Franklin also testified he had found a few of his pills missing, and then just before the argument with Gina when he demanded that S. and K. be drug tested, he had found more missing.

III.     Sufficiency of the Evidence

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the

_____

school while hanging around with her friend M.

5

essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In a factual sufficiency review, we are to afford "due deference" to a jury's determinations. *Marshall*, 210 S.W.3d at 625.

"Although an appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts*, 220 S.W.3d 521.

Franklin does not allege that the evidence fails to prove the elements of each offense and does not focus his argument on any particular one of the five counts involved in this prosecution. Instead, he contends that the evidence is insufficient to allow a rational finder of fact to find guilt beyond a reasonable doubt because of the inconsistent statements, contradictions, and admissions made by the State's witnesses. Specifically, he complains that S.'s testimony was untrustworthy since she had admitted to both her grandmother and a schoolmate that her allegations against Franklin were untrue.

6

Franklin also points out that W. admitted he had told Franklin's trial counsel that Franklin had nothing to do with the attic videotape.

Even though the record shows that there are discrepancies in the testimony and that S.'s and W.'s testimonies were particularly contrary to statements they had previously made out of court, the question before us is whether any of those discrepancies or inconsistencies is of such overwhelming strength to allow us to set aside the jury's determination of guilt. It is the province of the jury to judge the credibility of witnesses and the weight to be given their testimony, and reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). The jury may choose to believe some testimony and disbelieve other testimony. *Id.*

The jury made its determination after being confronted with these conflicts and inconsistencies in the testimony. The testimony of the witnesses was subjected to cross-examination and the jury's scrutiny. Under these facts, we will not intrude into that determination. The points of error are overruled.

## IV. Cross-Examination Denied?

Franklin next contends that the court committed reversible error by denying him the opportunity to cross-examine one of the complaining witnesses about her motive for making false accusations against him. He complains because he was not permitted to introduce evidence that S. was angry at Franklin (and thus had fabricated the allegations) because Franklin had forbade her

from seeing M., with whom he contends S. was having a homosexual relationship. The specific complaint was that he was not allowed to introduce evidence that the relationship was not merely that of a friend, but was sexual in nature, and a hearing outside the presence of the jury was conducted, expressly pursuant to Rule 412 of the Texas Rules of Evidence. *See* TEX. R. EVID. 412.

The argument is: proof of a sexual relationship makes it much more likely that S. would have an emotional meltdown and lash out by fabricating such lies against the person who forbade her to see a lover than against a person who forbade her to see a friend. Thus, the efficacy of Franklin's cross-examination was severely damaged by the court's decision not to allow that matter to be presented to the jury.

The court noted that no evidence of the existence of a homosexual relationship had been presented and concluded that it was more prejudicial than probative, and refused to allow counsel to question S. on that topic.

Neither at trial nor on appeal has the constitutional dimension of confrontation and cross-examination been raised. Thus, we restrict our review to the admissibility of the evidence under the Texas Rules of Evidence.[2]

---

[2]The Texas Court of Criminal Appeals has made it clear that an objection or argument that evidence is admissible to attack a witness' credibility may involve both the constitutional right of confrontation or evidentiary rules. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). In order to assert the confrontation objection, it is necessary that a party clearly articulate that the Confrontation Clause demanded admission of the evidence to allow the trial court to rule on the issue. *Id*. at 179–80. In failing to present such an argument or objection to the trial court, the confrontation issue was not preserved for appeal. *See Perry v. State*, 236 S.W.3d 859 (Tex. App.—Texarkana 2007, no pet.).

At trial, Franklin proffered the cross-examination of S. for the purpose of testing her credibility, by seeking to show motive for lying. Several Rules of Evidence mention or allude to testing a witness' credibility or to impeaching the witness. *See, e.g.*, TEX. R. EVID. 607 ("The credibility of a witness may be attacked by any party . . . ."), 611(b) ("A witness may be cross-examined on any matter relevant to any issue in the case, including credibility."). During the argument to the trial court, a discussion of Rule 609 concerning the admissibility of previous sexual conduct took place. The court evidently accepted counsel's position that the exception applied, as it related to the motive or bias of the alleged victim, but then concluded that its probative value did not outweigh the danger of unfair prejudice. *See* TEX. R. EVID. 412(b)(2)(C), (b)(3), 609.

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh'g). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under this standard, we will uphold a trial court's evidentiary ruling so long as the ruling is within the "zone of reasonable disagreement." *Id.*; *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.).

The State argues that this issue has not been preserved for review because counsel did not make an adequate offer of proof, citing *Kennedy v. State*, 184 S.W.3d 309, 315 (Tex. App.—Texarkana 2005, pet. ref'd). To preserve for review a ruling on evidence, the record must contain a timely, specific objection and, if the ruling excludes evidence, an offer of proof. *See* TEX.

9

R. EVID. 103(a); TEX. R. APP. P. 33.1(a). As we recognized there, Rule 103 does allow a proponent of the evidence in question to forego an offer of proof when the substance of the excluded evidence was apparent from the context. TEX. R. EVID. 103(a)(2). Error can be preserved either by an offer of proof in question-and-answer form or in the form of a concise statement by counsel. TEX. R. EVID. 103(b); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). If an offer of proof is made in the form of a concise statement, the concise statement must include a reasonably specific summary of the proposed testimony. *Love*, 861 S.W.2d at 901; *Harty v. State*, 229 S.W.3d 849, 854 (Tex. App.—Texarkana 2007, no pet.).

Franklin made no offer of proof indicating S.'s answers to the questions, and unlike the situations where the questions have been found sufficient to preserve the claimed error, in this case the substance of the evidence is not apparent from the context within which the questions were asked. *Compare Fairow v. State*, 943 S.W.2d 895, 905 (Tex. Crim. App. 1997).

We reiterate, to preserve error, the substance of the excluded **evidence** must be shown by offer of proof unless it is apparent from the context of the questions asked. TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.2. In this case, we know what the question would have been. What we do not know is what the answer would have been. Franklin did not proffer any other evidence that S. was a lesbian or that she and M. were lovers, and there is no offer of proof to show that such evidence could have been elicited.

We find this issue has not been preserved for our consideration on appeal.

10

## V. Ineffective Assistance of Counsel

Franklin next contends that he received ineffective assistance of counsel both at the guilt/innocence and the punishment stages of trial. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State,* 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

Franklin complains that counsel was ineffective because he did not ask specific questions, because he did not record or take a statement from his son W. about lying to the police and the CAC, by failing to call Franklin's sister to refute certain testimony about the video, and other unspecified matters.

Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it

11

conceivable or not—reasonable. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). In this case, there is no record at any level to indicate why counsel chose to take or declined to take any of these actions.[3] The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 812 (Tex. App.—Texarkana 2001, no pet.). In the absence of such a record, and in the lack of anything that would indicate such completely ineffective assistance as could be shown without such a record, we overrule the point of error.

We affirm the judgment.

Jack Carter
Justice

Date Submitted:     January 11, 2008
Date Decided:       February 20, 2008

Do Not Publish

---

[3]Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 65 (Tex. Crim. App. 2001). In addressing this reality, the Texas Court of Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons that trial counsel may have considered. The proper procedure for raising this claim is therefore almost always habeas corpus. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).