Ivan Knox LOVE, Appellant,

v.

The STATE of Texas, Appellee.

No. 200–92.

Court of Criminal Appeals of Texas, En Banc.

June 9, 1993.

Rehearing Denied Sept. 22, 1993.

J. Gary Trichter, Brian W. Wice, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Scott A. Durfee, Lester Blizzard and Suzanne Stanley, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of driving while intoxicated, and the trial judge assessed punishment at 180 days confinement, probated for a two year period, and a fine of $200.00. The court of appeals affirmed appellant's conviction in an unpublished opinion. *Love v. State*, No. 11–90–059–CR (Tex.App.—Eastland, delivered December 12, 1991). We granted appellant's petition on two grounds for review to determine whether the court of appeals erred in holding (1) the trial court did not err in precluding defense counsel from cross-examining one of the arresting officers on probable cause to arrest appellant because counsel failed to make an offer of proof as to what his cross-examination would have shown, and (2) the trial court did not err in refusing to permit appellant to call as a defense witness the breath alcohol testing supervisor who had earlier testified for the State and who was available to testify.

In his first ground for review, appellant claims the trial judge erred in refusing to permit him to fully cross-examine Officer G.W. Howard of the Humble Police Department. The record reflects that Howard was called by the State and testified that, in his opinion, appellant was intoxicated at the time of his arrest. On cross-examination, defense counsel attempted to question Howard about the existence of probable cause at the time of appellant's arrest, but the trial court precluded the questioning. Appellant challenged the trial court's ruling on direct appeal, and the court of appeals held appellant had not preserved the issue for appellate review because "[t]here was no offer of proof nor bill of exceptions to show the 'facts' which appellant could have proved through cross-examination of this adverse witness." *Id.*, slip op. at 7.

The record reveals that at the time the trial court informed defense counsel he could not question Howard regarding the existence of probable cause the following transpired:

THE COURT: I'm instructing you not to go into matters of law with this witness. This is a fact witness.

[COUNSEL]: I'm well aware of that.

THE COURT: He is only qualified to express an opinion on intoxication. Don't go into opinion things with him because he is not qualified on those. He is only qualified on one thing. And do not go into matters of law with him.

[COUNSEL]: If I may explain to the Court briefly.

THE COURT: You can explain.

COUNSEL: All right. There is a recent case out of the First Court of Appeals called, *Fox v. State.* And it is my intention of asking you later, after the evidence, for Article 3822 (sic) instruction on probable cause.

THE COURT: My instruction to you is the same. Do you understand it? And if you violate it you are in contempt of my ruling.

We find defense counsel's statement on the record is insufficient to preserve error for review. Tex.R.Crim.Evid. 103; Tex.R.App. Proc. 52.

■ An informal bill will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show. *Moosavi v. State,* 711 S.W.2d 53 (Tex.Crim.App.1986). When counsel intends to rely upon an informal bill to preserve error, the bill must include a summary of the proposed testimony. In this case, however, counsel merely informed the trial judge that he intended to establish a basis for an instruction on the lack of probable cause and, hence, failed to provide the trial judge with a concise statement regarding the content of the testimony he proposed to elicit from the witness. The court of appeals reached the correct conclusion, and therefore appellant's first ground for review is overruled.

■ In his first point of error on direct appeal, germane to his second ground for review here, appellant argued before the court of appeals that the trial judge erred in refusing to allow him to call Jesse Blalock, a technical supervisor for the intoxilyzer instrument, as a defense witness when he had not been excused by defense counsel and was available to testify. At trial, Blalock was called as a witness during the State's case-in-chief to testify regarding the internal functions of the intoxilyzer instrument used to measure appellant's breath alcohol level. Based on a hypothetical question and the result of the intoxilyzer machine, Blalock estimated appellant's breath alcohol level was .17 at the time of his arrest. The State concluded its direct examination with that question and passed the witness. Appellant's

counsel then cross-examined Blalock regarding his testimony as to, *inter alia,* "the inner workings and purported reliability of the Intoxilyzer, the breath testing program promulgated by the Texas Department of Public Safety, and the necessity of strict compliance with its requirements to ensure a reliable test result." Appellant's br. at 19. At the conclusion of Blalock's testimony, an off-the-record bench conference was held and then the trial judge stated to Blalock, "[y]ou are excused, sir."[1] Court then recessed for the evening.

In the proceedings the following morning, the State moved to quash appellant's subpoena for Blalock[2] as defense counsel "had adequate time to cross-examine Mr. Blalock yesterday, which he did at length." Defense counsel responded:

Yesterday I don't believe the record will reflect that I released Mr. Blalock. He was allowed to step down.

Number two, since we were breaking at 5:00 o'clock yesterday, I wanted to research a couple of things Mr. Blalock said during his cross-examination and during his direct testimony. I have done that now.

I checked with Mr. Blalock yesterday and he told me that he would be in Court 6. He is in Court 6 right now. He is about to step off the stand and he will be over here directly.

Upon inquiry from the trial judge, defense counsel also responded he was restricted in his cross-examination because, not knowing what Blalock's testimony would be, he did not have the necessary materials for impeachment purposes. The prosecutor expressed her belief that Blalock had been

---

1. The record does not reflect an agreement to excuse the witness nor any objection by appellant to this "excusal."

2. The record is unclear as to when this subpoena was obtained. As stated above, Blalock was called as a witness during the State's case-in-chief, and he testified favorably for the State. Yet, in his brief, under the statement of facts supporting this ground for review, appellant asserts the State "sought to preclude defense counsel from recalling Blalock for further cross-examination even though defense counsel pointed out that the witness had not been excused by him

and was *still subject to defense counsel's subpoena."* Appellant's brief at 20 (emphasis added). Appellant's record citations support the inference that he procured the subpoena subsequent to Blalock's testimony as the prosecutor argued, on her motion to quash the subpoena, that it was "highly inappropriate to subpoena [Blalock] once [defense counsel] had all the time that he desired for the cross-examination of Mr. Blalock yesterday." In this case, we do not consider the timing of the issuance of the subpoena critical to the disposition of appellant's ground for review.

released by both parties and the court, and the trial judge concurred. The judge then expressed that defense counsel had "full leeway" in his cross-examination and explained that unless defense counsel could show "some undiscovered matter" he would grant the State's motion. Appellant then moved to call Blalock as his own witness. Finding that motion untimely, the trial judge granted the State's motion to quash. Appellant perfected his offer of proof.

 As stated *infra*, appellant contended in the court of appeals that the trial court erred in precluding defense counsel from calling Blalock as a defense witness when he had not been excused by counsel and was available to testify. The court of appeals held:

> Appellant has not shown that the trial court abused its discretion in refusing to permit him to recall Blalock on the day after both sides had passed the witness. See Toler v. State, 546 S.W.2d 290 at 295 (Tex.Cr.App.1977); Davis v. State, 730 S.W.2d 171 at 174 (Tex.App.—Eastland

1987, pet'n ref'd); TEX.CODE CRIM. PROC.ANN. arts. 36.01(b) and 36.02 (Vernon 1981 & Supp.1991); TEX.R.CRIM. EVID. 610(a). Appellant attempted to offer this testimony after passing the witness and before the State had concluded its presentation, and the offer of proof does not show that introduction of further testimony from Blalock was necessary to the due administration of justice.

*Love*, slip op. at 4.[3]

The court of appeals cited *Toler v. State*, 546 S.W.2d 290 (Tex.Crim.App.1977), and *Davis v. State*, 730 S.W.2d 171 (Tex.App.—Eastland 1987, pet. ref'd.), in overruling appellant's contention. Essentially, these cases stand for the principles that (1) even if cross-examination is limited by the trial court, nothing is presented for review if there is no proof what the testimony would have been, and (2) the scope of cross-examination is within the control of the trial judge and within the exercise of his sound discretion. *Toler*, 546 S.W.2d at 295; and *Davis*, 730 S.W.2d at 174.[4] We take these principles

---

3. In his motion for rehearing filed in the court of appeals, appellant urged that the appellate court misperceived the issue presented on direct appeal. Appellant asserted the issue was not whether the trial court abused its discretion in refusing defense counsel's request to recall Blalock on the day after both sides had passed the witness, but rather whether the trial court abused its discretion in refusing to permit defense counsel to call Blalock when he had not been excused and was, in fact, available to testify. The motion for rehearing was "overruled."

We find that appellant's arguments and authorities in his brief confused the issues and did not directly address his stated point of error. Appellant's point of error, and subsequent ground for review before this Court, allege trial court error in refusing to allow appellant to call Blalock as a *defense witness*. Yet, his stated purpose at trial was to recall Blalock for impeachment, and in his briefs, appellant cites numerous cases addressing a party's right to reopen or present additional evidence under Art. 36.02, V.A.C.C.P. The court of appeals addressed the issue as appellant's right to recall a witness but intertwined several issues in its brief analysis. Nevertheless, the issue of recalling the witness was adequately presented for review. *Imo v. State*, 822 S.W.2d 635 (Tex.Crim.App. 1991).

We therefore do not perceive the issue at hand as addressing in what way a defendant can be precluded from calling a witness on his behalf. This Court has recognized that the right to com-

pel the presence of witnesses and present evidence in your own behalf is fundamental. *Ross v. State*, 504 S.W.2d 862 (Tex.Crim.App.1974); Art. I, § 10, Tex. Const. Pursuant to Art. 36.01, V.A.C.C.P. (Order of Proceeding in Trial), the State is entitled to present its evidence before "testimony on the part of the defendant shall be offered." Art. 36.01(a)(4)–(6). In the case at bar, appellant attempted to call Blalock as his witness during the State's case-in-chief; clearly this action fell outside the dictates of Art. 36.01. Therefore, the trial judge was correct (as the State asserts in its brief before this Court) that appellant's request in this respect was untimely. The issue more aptly presented here, however, is appellant's right to recall Blalock for further cross-examination.

4. The court of appeals also relied on Art. 36.02, V.A.C.C.P., which provides:

> The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.

Although not expressly limited, this article has generally been applied in those cases where a party has moved to "reopen" the evidence after he has *rested* or *closed* at trial. *See e.g. Rogers v. State*, 774 S.W.2d 247, 263 (Tex.Crim.App.1989), *cert. denied*, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520; *Scott v. State*, 597 S.W.2d 755 (Tex.Crim.App.1979) (panel opinion). The application of this article is necessarily limited by the Rules of Criminal Evidence.

and apply them to this case utilizing the Texas Rules of Criminal Evidence which were promulgated sometime after *Toler* and *Davis* were decided.

Appellant's complaint centers on the trial judge's refusal to allow defense counsel to recall Blalock for further cross-examination for impeachment purposes. Since appellant's alleged error is predicated upon an exclusion of evidence (impeachment testimony), pursuant to Rule 103(a)(2), he must have made an offer of proof of the proposed evidence. A concise statement dictated into the record is sufficient to preserve the error for review. Tex.R.App.Proc. 52(b). Intertwined with this offer of proof is a showing that the testimony sought to be elicited is relevant, i.e., it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and its probative value is not substantially outweighed by certain dangers. *See* Tex.R.Crim.Evid. 401 & 403.[5]

Appellant's trial counsel dictated his offer of proof into the record, and included proposed exhibits, indicating the issues about which he would have questioned Blalock and the exhibits he would have used to impeach Blalock's prior testimony and "the veracity and integrity of the State's intoxilyzer test result." *See Craig v. State,* 594 S.W.2d 91, 96 (Tex.Crim.App.1980) (panel opinion) (if court declines to permit defendant to recall State's witness for further cross-examination error will not call for reversal if offer of proof fails to show what defendant expected to prove by his cross-examination), citing *Duffy v. State,* 41 Tex.Cr.R. 391, 55 S.W. 176 (1900); *Johnson v. State,* 773 S.W.2d 721

(Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). From reviewing the record, we have determined appellant has met the threshold requirements of making an offer of proof and showing that the testimony he wished to adduce through Blalock was relevant. By recalling Blalock for further cross-examination, appellant desired to impeach the credibility of his prior testimony and the reliability of the intoxilyzer result. This testimony has a tendency to make less probable the fact that appellant was intoxicated, the determinative fact in this DWI prosecution. The State countered, however, at trial and on this petition that allowing further cross-examination of Blalock resulted in undue delay and the needless presentation of cumulative evidence.[6] *See* Tex.R.Crim.Evid. 403. By its ruling, the trial court evidently agreed. We must determine whether the trial court abused its discretion in refusing to permit defense counsel to recall Blalock for the purpose of impeachment.[7]

Whether the trial judge abused his discretion will depend on the facts of the case. This case is much like *Bills v. State,* 55 Tex.Cr.R. 541, 117 S.W. 835 (Tex.Crim.App. 1909), where defense counsel requested to recall a State's witness, who had testified and been "dismissed from the stand[,]" for further cross-examination to impeach his prior testimony. The trial judge denied the requested recall, and the appellate court found no abuse of discretion by the trial judge. Of consequence was that the record did not reflect when counsel came into possession of the impeaching testimony, that the witness was accessible, or that the trial proceedings would not have been unnecessarily delayed. 117 S.W. at 836.[8] The record in this cause

---

5. The Rule 401 definition of "relevance" encompasses the standard utilized in this State for decades that the evidence "is material and bears directly upon the main issues in the case[.]" *See Stone v. State,* 91 Tex.Cr.R. 313, 239 S.W. 209, 210 (Tex.Crim.App.1922).

6. At trial, the State argued that appellant had "all the time that he desired for the cross-examination" of the witness and requested that appellant indicate what testimony "he did not have or have time or know of yesterday during cross-examination."

7. The trial court in its discretion may permit a witness, even if he is the accused himself, to be

recalled for the purpose of impeaching him, or for the purpose of laying a predicate for impeachment. 25 Tex.Jur.3d. §§ 3320 & 3324. *See also Craig,* 594 S.W.2d at 95 (witnesses may be recalled for further cross-examination by a party, including even the recall by the State of a defendant in a criminal case who has previously testified in his own behalf).

8. *Cf. Garcia v. State,* 629 S.W.2d 196, 198 (Tex. App.—1982, pet. ref'd), where defendant was allowed to recall the victim for further cross-examination, but trial judge limited the scope of that examination. The appellate court found no abuse of discretion where defendant failed to

before us, however, is more adequately developed.

At the time the trial judge precluded defense counsel from recalling Blalock to the witness stand, counsel stated on the record that after the evening recess the previous day he had done research in response to Blalock's testimony and was now in possession of impeachment materials. Counsel also indicated he had spoken to Blalock about testifying again, that he would be available shortly, and that his proposed cross-examination would only take about fifteen minutes. After the trial judge quashed the subpoena and counsel made his offer of proof, the court took a one hour recess. When the parties returned to the courtroom, defense counsel went on the record again and noted that Blalock was in the courthouse and available to testify. The State then rested its case. Given these circumstances, we cannot say that allowing defense counsel to recall Blalock would have caused undue delay in the trial proceedings.

We also do not find defense counsel was attempting to introduce cumulative evidence. In his proffer defense counsel offered exhibits which contained information directly contradicting Blalock's prior testimony and discrediting the reliability of the intoxilyzer instrument. The proposed evidence was not repetitive of previous testimony even though counsel conducted a thorough cross-examination the previous day; rather, it was new information for impeachment purposes.

■ "Cross-examination is the cornerstone of the criminal trial process and, as such, a defendant must be given wide latitude ... to impeach [a witness's] credibility." *Gutierrez v. State*, 764 S.W.2d 796, 799 (Tex.Crim.App. 1989).[9] Finding that appellant's further cross-examination of Blalock would not cause undue delay in the trial or present cumulative evidence, we therefore hold the trial

judge abused his discretion in not allowing defense counsel to recall him.

■ Having found trial error, we must conduct a harm analysis pursuant to Tex. R.App.Proc. 81(b)(2). In *Shelby v. State*, 819 S.W.2d 544 (Tex.Crim.App.1991), this Court articulated the analysis to be done when evidence has been excluded via the erroneous limitation of cross-examination. The analysis is essentially a three-prong process:

First, assume that the damaging potential of the cross-examination were fully realized. *Van Arsdall* [475 U.S. at 683], 106 S.Ct. at 1438.[10] Second, with that assumption in mind, review the error in connection with the following factors:

1) The importance of the witness' testimony in the prosecution's case;

2) Whether the testimony was cumulative;

3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

4) The extent of cross-examination otherwise permitted; and,

5) The overall strength of the prosecution's case.

*Van Arsdall* [475 U.S. at 683], 106 S.Ct. at 1438.

Finally, in light of the first two prongs, determine if the error was harmless beyond a reasonable doubt.

*Shelby*, 819 S.W.2d at 547. To perform this analysis, we must review the facts of this case and the excluded evidence.

■ The State presented evidence from two Humble Police Department officers, who arrested appellant and administered the intoxilyzer test, and from Blalock. The officers testified, *inter alia*, that they initially stopped appellant for running a red light, but arrested him for DWI because he had slurred speech and a very strong alcohol odor. No field sobriety tests were done at

---

demonstrate need for additional cross-examination after lengthy cross-examination during State's case-in-chief.

**9.** That right is limited by the trial court's discretion to terminate repetitive questions, preclude admissibility of highly prejudicial evidence or irrelevant testimony, prevent harm to the wit-

ness, etc. *See e.g. Gutierrez*, 764 S.W.2d 796; *Castle v. State*, 748 S.W.2d 230 (Tex.Crim.App. 1988); and *Satterwhite v. State*, 499 S.W.2d 314 (Tex.Crim.App.1973).

**10.** *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

the scene, but such tests were done at the station while appellant was videotaped. Appellant successfully performed certain exercises but not others. Both officers expressed their opinions, based on their observations and experience, that appellant was intoxicated, but conceded that appellant's performance may have exhibited the "normal use of his physical faculties." The intoxilyzer operator stated that solely on the basis of his observations of appellant in the video room he would want to investigate further whether he was intoxicated. This officer also testified appellant voluntarily took the breath test, the result of which was a .16.

Blalock testified that the intoxilyzer instrument analyzes breath alcohol concentration, and he explained how the machine converts the breath sample into the percentage breath alcohol concentration which is the reported result. Blalock explained that prior to 1984,[11] the intoxilyzer result was based upon a 2100 to 1 blood-breath ratio, meaning for every 2100 parts of alcohol in the blood there is one part of alcohol in the breath. This ratio was used to convert breath alcohol concentration into blood alcohol concentration for the intoxilyzer test result. Blalock further explained that since 1984 intoxilyzer op-

erators report the breath alcohol concentration rather than reporting its conversion to blood alcohol concentration. He stated the intoxilyzer machine was the same, but the results were interpreted differently as the test reports only breath alcohol concentration and "no ratio is involved." In determining the breath alcohol concentration, the machine measures an amount of alcohol which could be put on the head of a pin. The machine is calibrated to report the amount of alcohol in 210 liters of breath although the volume of air actually measured is only "about a pint."

The intoxilyzer instrument used in this case was the 4011 ASA model, which Blalock testified was being replaced by a machine called the 5000. Blalock stated that neither model has a condensation detector.[12] He also inspected the intoxilyzer machine January 8, 1988, and January 25, 1988,[13] but only to determine whether it could "read alcohol." To run a valid test on the intoxilyzer it is necessary to follow the Department of Public Safety regulations. Pursuant to his knowledge of the regulations, Blalock trains operators, including the officer who administered the test in this case, to determine that the reference sample device [14] used in the intoxi-

---

11. The intoxilyzer machine utilized in this case had been placed in service in 1981.

12. The importance of this testimony regarding the condensation detector is shown in the following colloquy:

Q. (by defense counsel) [The 5000] has something called a condensation detector; right?
A. (by Blalock) I don't—I'm not familiar with that term, no.
Q. Well, how about this: It has a device built into it that if there is condensation in the sample chamber it will shut down the machine and prevent it from printing?
A. I'm unfamiliar with that and I don't think that is correct.
Q. It has a radio frequency interference detector?
A. It does, yes.
Q. Well, in the machine we presently use there is like a chamber, isn't there, that has mirrors in it; right?
A. Yes.
Q. And light goes through and bounces off the mirrors, nine foot length?
A. That is correct.
Q. Now, Mr. Blalock, what happens if there is condensation on a mirror? Wouldn't that prevent light from being bounced off altogether?

A. It would disperse the light beam.
Q. It would absorb some of the light?
A. Yes, it would.
Q. And it would prevent light from coming out to be measured?
A. Yes, it would affect it.
Q. It would affect the end result when the machine read the amount of light that got to the end of the breath test machine?
A. Yes.
Q. And that would be indicated possibly as alcohol absorbing as opposed to condensation absorbing the light?
A. It could be.
Q. There is not (sic) condensation detector in the machine that was used on [appellant]; was there?
A. No. There is none in the 5000, either.
Q. Are you sure about that?
A. Yes, sir.

13. The alleged date of this DWI offense was January 17, 1988.

14. Blalock explained the purpose of the reference sample:

With every subject breath test, included in the test sequence is a reference analysis test. It is a calibration check. And it utilizes a

lyzer machine is at the proper temperature before running each breath test. Blalock does not require nor instruct the intoxilyzer operators to verify the reference sample device is properly sealed each time a breath test is run; he only requires such verification when the solution is changed.

Appellant testified at trial and was the only witness for the defense. He stated that prior to his arrest he had worked from 9:00 a.m. to 5:00 p.m. at a trail ride. He drank two beers "for sure" possibly three between 5:00 and 6:00 p.m. His testimony regarding the events surrounding his arrest and subsequent treatment at the police station controverted the testimony from both officers. Appellant stated the light was green when he approached the intersection but it was yellow by the time he got through it. He was precluded from proceeding through it because a patrol car "had come out in the intersection" and he had to slam on his brakes to avoid hitting it. The patrol car then pursued him, and he was arrested for DWI.

At the police station, appellant made several requests to use the telephone but was finally told he "wasn't using shit until [he] blew in their machine." Appellant asserted he was handcuffed and held by two officers while a third officer (who testified in this case) forced the tube from the intoxilyzer machine into his mouth. Appellant stated he did not voluntarily take the breath test and that he was not guilty of DWI.

In his offer of proof, appellant offered exhibits which he would have used to impeach the credibility of Blalock's testimony and the veracity of the State's intoxilyzer test result. Appellant first proffered "a CMI Intoxilyzer advertisement which ... indicates that breath alcohol concentration is, in turn, converted using the universally accepted 2100-to-1 correlation ratio" to contradict

Blalock's testimony that the intoxilyzer is not premised upon this correlation. Secondly, appellant presented an intoxilyzer advertisement from the manufacturer of the 5000 model to impeach Blalock's testimony that there was no water vapor protection built into this model. The advertisement states "No false reading due to water vapor absorption. The Intoxilyzer 5000 automatically subtracts water vapor from the reading." Next, appellant read from an operator's manual which indicated not all individuals have a breath-blood ratio of exactly 1 to 2100 to which the intoxilyzer instrument is calibrated. Finally, appellant presented a section of that manual addressing the procedure to determine " 'Reference Sample Ready' as required on the **TEST SEQUENCE INSTRUCTIONS**" to show the intoxilyzer operator must check the seals in order to conduct a breath test according to DPS regulations.

In conducting our harm analysis where we have an improper limitation of cross-examination, this Court first focuses on Blalock's testimony and assumes the damaging potential of appellant's cross-examination was fully realized as we must assume appellant's exhibits were admitted before the jury. We then apply the five factors of the second prong of the analysis.

1. The Importance of the Witness's Testimony in the Prosecution's case

The information alleged, which the jury charge mirrored, the two definitions of "intoxicated" as provided by statute.[15] The State's burden was to show appellant either was not having the normal use of mental or physical faculties by reason of the introduction of alcohol into his body or had an alcohol concentration of .10 or more while driving or operating his vehicle in a public place. The two Humble Police Department officers provided testimony on these issues. Blalock's

device known as a simulator. The air is introduced into this simulator device and it picks up some alcohol from the solution that is in the device. And this alcohol vapor then is blown into—passes into the Intoxilyzer and it is analyzed in the same manner as the individual's breath.

The difference is that with the alcohol vapor from the simulator, there is a known amount

of alcohol concentration present. In other words, it has a predicted value.

If the Intoxilyzer analyzes the vapor and gets the proper alcohol concentration, it indicates that the instrument is calibrated properly and that it is working properly.

15. *See* V.A.C.S. Art. 6701*l*–1(a)(2).

testimony specifically concerned appellant by predominantly addressing how the intoxilyzer measured alcohol concentration and the regulations governing operating procedures, and then by expressing his opinion based on the intoxilyzer result that appellant was intoxicated.

**2. Whether the testimony was cumulative**

Blalock's testimony was not cumulative of other evidence offered at trial. While Officer Williams, the intoxilyzer operator, testified to the procedures he used in administering the breath test, he did not explain the mechanics of the machine in measuring alcohol concentration.

**3. The Presence or Absence of Evidence Corroborating or Contradicting the Testimony of the Witness on Material Points**

Appellant testified that he was not intoxicated. The evidence appellant was precluded from presenting before the jury on further cross-examination was evidence which would have contradicted Blalock's testimony regarding the internal functions of the intoxilyzer and challenged his knowledge thereof.

**4. The Extent of Cross-examination Otherwise Permitted**

Appellant was otherwise permitted to fully cross-examine Blalock.

**5. The Overall Strength of the Prosecution's Case**

The State had evidence that appellant did not have the normal use of his mental and physical faculties and that he had a breath alcohol concentration of .16. The State also presented testimony of appellant's moving violation which precipitated his arrest for DWI. The videotape, however, was inconclusive as it showed appellant successfully performing field sobriety tests, as well as failing some. Through cross-examination, defense counsel pointed out that the officer in the

videotape exhibited some of the same characteristics as appellant which the officer testified indicated appellant was intoxicated. Appellant's testimony contravened the State's evidence except for the breath test result, which test appellant asserted he was compelled by officers to take. Appellant denied running the red light and contended he was not guilty of the DWI offense. The trial was thus a credibility battle which the jury resolved in the State's favor.

The final prong in this harm analysis requires us to determine, in light of the first two prongs, if the error in limiting the cross-examination was harmless beyond a reasonable doubt. Had defense counsel been allowed to present his impeachment evidence, the jury would have heard that some of Blalock's testimony was incorrect. The precluded evidence cast doubt on the reliability of the breath test result and discredited some testimony from Blalock. Although his testimony was not essential for conviction, the State chose to present him as its expert on breath alcohol testing, and we must consider that evidence which was before the jury at trial. Considering the conflicting evidence in this case, we cannot conclude beyond a reasonable doubt that the denial of further cross-examination for impeachment purposes made *no* contribution to the verdict in this cause.[16] Appellant's second ground for review is sustained.

Accordingly, the judgment of the court of appeals is reversed and this cause is remanded to the trial court.

McCORMICK, P.J., not participating.

CLINTON, J., dissents because the majority does not address and resolve ground # 2 as presented to and treated by the court of appeals, and in any event the latter should make the harm analysis.

---

**16.** Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides:
 If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under

review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.