In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00083-CR


______________________________




GARLAND EARL HAWKINS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 36,165-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury convicted Garland Earl Hawkins of driving while intoxicated, subsequent offense, and
assessed punishment at three years' imprisonment. Hawkins filed his notice of appeal April 18,
2008.

 This Court has now been informed that Hawkins has died. 

 The death of an appellant during the pendency of his or her appeal deprives this Court of
jurisdiction. Tex. R. App. P. 7.1(a)(2); Whitmire v. State, 943 S.W.2d 894 (Tex. Crim. App. 1997);
Rheinlander v. State, 918 S.W.2d 527, 528 (Tex. Crim. App. 1996). Accordingly, this appeal is
permanently abated.

 


 Bailey C. Moseley

 Justice


Date Submitted: July 2, 2008

Date Decided: July 3, 2008


Do Not Publish




 During the Assault

 Mack's first point claims the trial court erred by limiting his ability to cross-examine a State
witness "about exculpatory statements made by a co-defendant." Mack maintains the statements
about which he was not allowed to inquire would have shown Mack was not in the room where Perry
was beaten. Mack has neither identified which State witness he was precluded from cross-examining, nor has he cited any portion of the trial record wherein he was prevented from cross-examining on this issue. The only citation to the reporter's record Mack supplies does not address
this issue, but is an instance where the trial court overruled a State's objection. An appellant's brief
"must contain . . . appropriate citations . . . to the record." Tex. R. App. P. 38.1(h). Mack's brief does
not direct this Court to the portions of the record that support his charge. Without such references
to the record, it is difficult to know exactly what Mack's complaint is; nonetheless, we will, in the
interest of justice, attempt to discern the source of his assertion.

 Mack's defense was premised on his contention that he was not as culpable as the other two
confederates. Specifically, Mack testified that he did not participate in the assault of Perry and
attempted to convince the others not to harm her. On direct examination, an investigator for the
Bowie County Sheriff's Office, Brent Caudle, read Mack's statement given to investigators wherein
he stated that he was not in the bedroom when Tyson and Sledge battered Perry. To support this
defense, Mack's attorney questioned Caudle about a statement co-defendant Sledge gave, in which
Sledge contradicted Mack's testimony and "[Sledge] indicated that himself and Mr. Mack's
placement in the house were reversed. He reversed their roles in the offense." The thrust of Mack's
questioning seems to have been that Sledge made two inconsistent statements to investigators. As
to the other defendant, Caudle stated that "Mr. Tyson's statement corroborated Mr. Mack's
statement." Following that, Mack's attorney asked Caudle, "And the second statement after being
confronted with the physical evidence that you had, is that the one that corroborated Mr. Mack's
statement?" The State objected that Sledge's statement would constitute hearsay; the trial court
sustained the objection. We assume this is the part of the record upon which Mack bases his
appellate complaint. But Mack did not further offer to prove the statements of Tyson or Sledge. 

 An error may not be predicated upon a ruling which excludes evidence unless a substantial
right of a party is affected and the substance of the evidence was made known to the court by offer
of proof or was apparent from the context within which questions were asked. Tex. R. Evid.
103(a)(2). An offer of proof may be in question-and-answer form, or it may be in the form of a
concise statement by counsel. Tex. R. Evid. 103(b); Love v. State, 861 S.W.2d 899, 901 (Tex. Crim.
App. 1993). An offer of proof to be accomplished by counsel's concise statement must include a
reasonably specific summary of the evidence offered and must state the relevance of the evidence
unless the relevance is apparent, so that the court can determine whether the evidence is relevant and
admissible. Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (citing Love, 861 S.W.2d at
901). Some of the statements made by accomplices were admitted into evidence, so there can be no
complaint regarding those. Otherwise, Mack failed to offer proof of the evidence that was excluded,
but only argued that such statements would be admissible as "statements against penal interest." 
Without a record of the excluded testimony, we cannot conclude the trial court erred. 

 Even if Mack had preserved this issue for our review, we would find no harm. Mack's
statement to investigators was read to the jury and admitted into evidence. In it, he claimed that he
did not participate in the beating of Perry; rather, he was busy stealing her television. Later, Mack
testified he only intended to participate in theft of homes with no residents present; he also said that
he was not in the room where Sledge and Tyson were assaulting Perry. Mack said he tried to get the
other two to leave Perry alone and told them, "Well, if you kill her, you've got to kill me." 
(Investigators did say that, when they first spoke to Mack following his arrest, he was crying, very
upset, and immediately inquiring about the victim.) Notwithstanding Mack's appellate complaint,
he was allowed to establish, by questioning Caudle, that Tyson's statement "corroborated Mr. Mack's
statement." Based on the presentation of this evidence, we do not believe any substantial rights of
Tyson were transgressed. See Tex. R. App. P. 44.2(b).

 Mack also argues that his right of confrontation of witnesses was violated, but the right of 
confrontation was never broached to the trial court. Failure to present such an objection at trial
results in a waiver or forfeiture of the issue. Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App.
2000). We overrule Mack's first point of error. 

 B. Mack's Relationship to Co-Defendant

 Mack also claims error in the trial court's alleged limitation on Mack's ability to cross-examine a State's witness. Mack complains that, because of a trial court limitation on his ability to
cross-examine one of the State's witnesses, he was not able to develop the fact that co-defendants
were cousins. Again, Mack does not designate which prosecution witness he was unable to fully
cross-examine or supply citations to the reporter's record. Further, Mack offers no explanation how
or why "the relationship between the co-defendants is important to understanding the totality of this
case." 

 Upon our own review of the record, we find that Mack quizzed Caudle as to whether he knew
of any familial relationship between any of the defendants. When asked if Sledge and Tyson were
cousins, Caudle said he did not know. No further offer of proof on this issue was developed. Mack
later apparently showed Caudle a copy of a statement from one of the other defendants to "refresh
his memory," but that statement was neither offered as evidence, nor was a succinct statement of its
contents revealed. There is nothing for this Court to review. 

 Even if Mack had preserved this issue for appeal, we would find no harm. Evidence of the
familial relationship was presented to the jury showing that Mack is a cousin of Tyson, and Tyson
and Sledge are cousins. Mack testified that he and Tyson are cousins and that Sledge and Tyson are
cousins. There was no further evidence of any kinship between Sledge and Mack. Finally, Mack
offers no explanation or argument why these relationships were relevant. We overrule Mack's
second point of error. 

II. Allegation of Negotiated Plea Agreement

 Mack asserts the trial court failed to determine whether a negotiated plea agreement existed
between the attorneys. He claims a negotiated plea agreement had been reached with the State, but
the prosecutor handling his case, with whom Mack made the agreement, left the Bowie County
District Attorney's Office, and subsequently denied the existence of a negotiated plea agreement. 
Mack's understanding was that an agreement was reached wherein he would testify against Sledge
and Tyson; in exchange, Mack would receive a sentence that was less than the sentences of those co-defendants. 

 At a brief hearing on this matter, Mack testified that he asked his attorney to negotiate a plea
agreement whereby he would testify against the other defendants and receive a sentence of five years. 
Mack said that it was his understanding an agreement (1) had been reached and that his case was
removed from the docket for some time. He further testified he had been in jail almost thirty months
before trial because he thought a deal had been reached. Mack acknowledged that later he received
copies of correspondence from his attorney to the prosecutor's office which indicated no agreement
was in place; he agreed that the only offer he received was for a sentence of forty years, and that offer
was made the morning of trial. Mack's attorney told the trial court he had filed a motion to dismiss,
before Mack's indictment, but the attorney had not pursued that motion because he thought a plea
agreement had been reached. 

 Mack did file a motion to dismiss about two weeks before the State indicted him. But there
is nothing in the record showing the existence of any negotiated plea agreement. There is no
evidence that Mack attempted to secure the testimony of the former prosecutor with whom he claims
to have reached an agreement. In fact, he concedes that attorney denied that the parties had reached
any negotiated plea agreement. Mack filed a motion for new trial, which only alleged a generic
"violation of the defendant's right to equal protection under the United State [sic] Constitution." He
made no allegation of a violation of his right to enforcement of a negotiated plea agreement; and we
find nothing in the record indicating he attempted to secure a hearing on the motion for new trial
regarding the existence of any plea agreement. The record contains no evidence that a negotiated
plea was ever agreed upon. In response to his counsel's question, Mack agreed that "[t]he first real
offer that you've gotten in this case was this morning." Mack rejected that offer. Additionally, the
trial court noted that no negotiated plea agreement was ever presented to the court for acceptance or
rejection. We overrule this point of error.

 We affirm the judgment of the trial court. 




 Jack Carter

 Justice


Date Submitted: April 8, 2009

Date Decided: April 9, 2009


Do Not Publish

1. We are not sure what remedy Mack asserts he is entitled to if he is correct that the State
reneged on a negotiated plea agreement. He did not plead guilty, so he could not ask to withdraw
a guilty plea. Further, there is no record of what, if any, the specific agreement was he argues the
State breached, so we could not order specific performance of the contract. See Shannon v. State,
708 S.W.2d 850, 852 (Tex. Crim. App. 1986) ("when a defendant, who has entered a negotiated plea
of guilty, challenges the conviction and is successful, the appropriate remedy is specific performance
of the plea, if possible, or, if not, withdrawal of the plea, with both parties, including the State,
returned to their original positions.").