

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00088-CR

_____

LAQUINCYUN MACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 06F0403-005

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Dora Perry was asleep in her locked bedroom about 7:00 a.m. on October 18, 2005, when Laquincyun Mack kicked in her locked front door. Mack, Haven Tyson, and Christopher Sledge entered the home where Tyson or Sledge discovered Perry after breaking into the bedroom. Perry was repeatedly beaten, and ultimately asked if she preferred being knocked out or killed. She told the robbers she chose being knocked out, and after being hit with an iron, a lamp, and a telephone, she feigned unconsciousness. The robbers left; Bowie County deputies in the area gave chase. At one point, the robbers' car, driven by Tyson, almost rammed one police vehicle. Tyson finally lost control of the car and hit a tree; the three robbers fled into the woods and were eventually apprehended.

Mack was convicted of robbery and sentenced to fifty years' incarceration. On appeal, he claims: (1) the trial court erroneously limited his ability to cross-examine State's witnesses, and (2) the State reneged on a plea agreement to Mack's detriment. We overrule these points and affirm the trial court's judgment.

I.      Claims of Limited Cross-Examination

A.      Evidence of Mack's Location During the Assault

Mack's first point claims the trial court erred by limiting his ability to cross-examine a State witness "about exculpatory statements made by a co-defendant." Mack maintains the statements about which he was not allowed to inquire would have shown Mack was not in the room where Perry

2

was beaten. Mack has neither identified which State witness he was precluded from cross-examining, nor has he cited any portion of the trial record wherein he was prevented from cross-examining on this issue. The only citation to the reporter's record Mack supplies does not address this issue, but is an instance where the trial court overruled a State's objection. An appellant's brief "must contain . . . appropriate citations . . . to the record." Tex. R. App. P. 38.1(h). Mack's brief does not direct this Court to the portions of the record that support his charge. Without such references to the record, it is difficult to know exactly what Mack's complaint is; nonetheless, we will, in the interest of justice, attempt to discern the source of his assertion.

Mack's defense was premised on his contention that he was not as culpable as the other two confederates. Specifically, Mack testified that he did not participate in the assault of Perry and attempted to convince the others not to harm her. On direct examination, an investigator for the Bowie County Sheriff's Office, Brent Caudle, read Mack's statement given to investigators wherein he stated that he was not in the bedroom when Tyson and Sledge battered Perry. To support this defense, Mack's attorney questioned Caudle about a statement co-defendant Sledge gave, in which Sledge contradicted Mack's testimony and "[Sledge] indicated that himself and Mr. Mack's placement in the house were reversed. He reversed their roles in the offense." The thrust of Mack's questioning seems to have been that Sledge made two inconsistent statements to investigators. As to the other defendant, Caudle stated that "Mr. Tyson's statement corroborated Mr. Mack's statement." Following that, Mack's attorney asked Caudle, "And the second statement after being

3

confronted with the physical evidence that you had, is that the one that corroborated Mr. Mack's statement?" The State objected that Sledge's statement would constitute hearsay; the trial court sustained the objection. We assume this is the part of the record upon which Mack bases his appellate complaint. But Mack did not further offer to prove the statements of Tyson or Sledge.

An error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked. TEX. R. EVID. 103(a)(2). An offer of proof may be in question-and-answer form, or it may be in the form of a concise statement by counsel. TEX. R. EVID. 103(b); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). An offer of proof to be accomplished by counsel's concise statement must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible. *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (citing *Love*, 861 S.W.2d at 901). Some of the statements made by accomplices were admitted into evidence, so there can be no complaint regarding those. Otherwise, Mack failed to offer proof of the evidence that was excluded, but only argued that such statements would be admissible as "statements against penal interest." Without a record of the excluded testimony, we cannot conclude the trial court erred.

Even if Mack had preserved this issue for our review, we would find no harm. Mack's statement to investigators was read to the jury and admitted into evidence. In it, he claimed that he

4

did not participate in the beating of Perry; rather, he was busy stealing her television. Later, Mack testified he only intended to participate in theft of homes with no residents present; he also said that he was not in the room where Sledge and Tyson were assaulting Perry. Mack said he tried to get the other two to leave Perry alone and told them, "Well, if you kill her, you've got to kill me." (Investigators did say that, when they first spoke to Mack following his arrest, he was crying, very upset, and immediately inquiring about the victim.) Notwithstanding Mack's appellate complaint, he was allowed to establish, by questioning Caudle, that Tyson's statement "corroborated Mr. Mack's statement." Based on the presentation of this evidence, we do not believe any substantial rights of Tyson were transgressed. *See* TEX. R. APP. P. 44.2(b).

Mack also argues that his right of confrontation of witnesses was violated, but the right of confrontation was never broached to the trial court. Failure to present such an objection at trial results in a waiver or forfeiture of the issue. *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). We overrule Mack's first point of error.

**B.      Mack's Relationship to Co-Defendant**

Mack also claims error in the trial court's alleged limitation on Mack's ability to cross-examine a State's witness. Mack complains that, because of a trial court limitation on his ability to cross-examine one of the State's witnesses, he was not able to develop the fact that co-defendants were cousins. Again, Mack does not designate which prosecution witness he was unable to fully cross-examine or supply citations to the reporter's record. Further, Mack offers no explanation how

5

or why "the relationship between the co-defendants is important to understanding the totality of this case."

Upon our own review of the record, we find that Mack quizzed Caudle as to whether he knew of any familial relationship between any of the defendants. When asked if Sledge and Tyson were cousins, Caudle said he did not know. No further offer of proof on this issue was developed. Mack later apparently showed Caudle a copy of a statement from one of the other defendants to "refresh his memory," but that statement was neither offered as evidence, nor was a succinct statement of its contents revealed. There is nothing for this Court to review.

Even if Mack had preserved this issue for appeal, we would find no harm. Evidence of the familial relationship was presented to the jury showing that Mack is a cousin of Tyson, and Tyson and Sledge are cousins. Mack testified that he and Tyson are cousins and that Sledge and Tyson are cousins. There was no further evidence of any kinship between Sledge and Mack. Finally, Mack offers no explanation or argument why these relationships were relevant. We overrule Mack's second point of error.

## II. Allegation of Negotiated Plea Agreement

Mack asserts the trial court failed to determine whether a negotiated plea agreement existed between the attorneys. He claims a negotiated plea agreement had been reached with the State, but the prosecutor handling his case, with whom Mack made the agreement, left the Bowie County District Attorney's Office, and subsequently denied the existence of a negotiated plea agreement.

6

Mack's understanding was that an agreement was reached wherein he would testify against Sledge and Tyson; in exchange, Mack would receive a sentence that was less than the sentences of those co-defendants.

At a brief hearing on this matter, Mack testified that he asked his attorney to negotiate a plea agreement whereby he would testify against the other defendants and receive a sentence of five years. Mack said that it was his understanding an agreement[1] had been reached and that his case was removed from the docket for some time. He further testified he had been in jail almost thirty months before trial because he thought a deal had been reached. Mack acknowledged that later he received copies of correspondence from his attorney to the prosecutor's office which indicated no agreement was in place; he agreed that the only offer he received was for a sentence of forty years, and that offer was made the morning of trial. Mack's attorney told the trial court he had filed a motion to dismiss, before Mack's indictment, but the attorney had not pursued that motion because he thought a plea agreement had been reached.

Mack did file a motion to dismiss about two weeks before the State indicted him. But there is nothing in the record showing the existence of any negotiated plea agreement. There is no

---

[1]We are not sure what remedy Mack asserts he is entitled to if he is correct that the State reneged on a negotiated plea agreement. He did not plead guilty, so he could not ask to withdraw a guilty plea. Further, there is no record of what, if any, the specific agreement was he argues the State breached, so we could not order specific performance of the contract. *See Shannon v. State*, 708 S.W.2d 850, 852 (Tex. Crim. App. 1986) ("when a defendant, who has entered a negotiated plea of guilty, challenges the conviction and is successful, the appropriate remedy is specific performance of the plea, if possible, or, if not, withdrawal of the plea, with both parties, *including the State*, returned to their original positions.").

evidence that Mack attempted to secure the testimony of the former prosecutor with whom he claims to have reached an agreement. In fact, he concedes that attorney denied that the parties had reached any negotiated plea agreement. Mack filed a motion for new trial, which only alleged a generic "violation of the defendant's right to equal protection under the United State [sic] Constitution." He made no allegation of a violation of his right to enforcement of a negotiated plea agreement; and we find nothing in the record indicating he attempted to secure a hearing on the motion for new trial regarding the existence of any plea agreement. The record contains no evidence that a negotiated plea was ever agreed upon. In response to his counsel's question, Mack agreed that "[t]he first real offer that you've gotten in this case was this morning." Mack rejected that offer. Additionally, the trial court noted that no negotiated plea agreement was ever presented to the court for acceptance or rejection. We overrule this point of error.

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:      April 8, 2009
Date Decided:        April 9, 2009

Do Not Publish

8