**Opinion issued September 27, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00144-CR

———————————

**DAYNE ADENAUER WHITE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 178th District Court
Harris County, Texas
Trial Court Case No. 1225258

**MEMORANDUM OPINION**

A jury found appellant Dayne Adenauer White guilty of the offense of murder.[1]  After finding the allegations in two enhancement paragraphs to be true, the jury sentenced appellant to 62 years in prison.  Appellant raises two issues on appeal.  He contends that the trial court abused its discretion (1) by sustaining the State's relevancy objection to certain testimony appellant sought to elicit on cross-examination and (2) by overruling appellant's hearsay objection to the State's introduction of a 9-1-1 recording.

We affirm.

**Background Summary**

On March 11, 2009, Caesar Vaughn went to visit his friend, S. Bell, at the boarding house where she lived.  Appellant lived in a boarding house next door.  He knew Bell and Vaughn.  That morning, appellant and Vaughn spoke to one another at the boarding house.  Appellant appeared to be angry and upset while speaking with Vaughn.  Appellant then left in his car.  Bell and Vaughn went to the kitchen to make lunch.

Vaughn was standing by the stove cooking pork chops over an open flame when appellant returned.  Bell saw appellant standing in the kitchen door.  She heard a sound similar to water splashing.  She then saw that Vaughn was on fire.

---

[1]     *See* TEX. PEN. CODE ANN. § 19.02 (Vernon 2011).

2

Vaughn ran past Bell, and Bell's arm was burned. Vaughn ran to the backyard to extinguish the fire.

Bell saw appellant looking at Vaughn. Appellant was smiling. Bell also heard appellant say, "Now." Appellant told Bell that he was "sorry," explaining "that wasn't for you." Appellant then quickly left the house.

Vaughn and Bell waited outside the house for the ambulance to arrive. Bell asked Vaughn what substance appellant had thrown on him, and Vaughn responded that it was gasoline.

Vaughn and Bell were transported to the hospital. Bell's arm was treated, and she was released later that day. Vaughn was admitted to the hospital. He had burns on 70 percent of his body.

In the afternoon, Effron Williams was driving his cab by a gas station located near the boarding house where the incident had occurred that morning. Williams saw a crowd and a television news crew at the station. In the crowd, Williams spotted Bell. Williams knew Bell. He and Bell had gone to school together. Williams stopped at the gas station to learn what was occurring.

Appellant was also at the gas station. Williams got out of his cab and stood near appellant. Williams overheard appellant talking to a man. In response to what he heard appellant say, Williams called 9-1-1 on his mobile phone.

3

In his call to 9-1-1, Williams told the dispatcher that he was at the scene and had just heard appellant telling another man that appellant had thrown gasoline on Vaughn because Vaughn owed him $200. Williams also reported that he heard appellant say that he would burn anyone who told police that he was the one who had burned Vaughn.

Williams gave the dispatcher a physical description of appellant. He told her that, as he was on the phone, he saw appellant enter the boarding house. An officer was dispatched to the boarding house. Appellant was taken to the police station to be interviewed.

Bell also told police investigators what she had witnessed. She picked appellant out of a photo array.

Forensic analysis revealed that gasoline was present on the clothes Vaughn wore at the time he was burned. Gasoline was also detected in the kitchen of the boarding house and on a singed area in the backyard of the house.

Vaughn lived for seven days in the hospital before he died. An autopsy showed that he died from complications related to his burn injuries.

Appellant was charged with the offense of murder. A jury found him guilty and, after finding two enhancement paragraphs to be true, assessed appellant's punishment at 62 years in prison. This appeal followed.

4

## Evidentiary Rulings

Appellant raises two issues on appeal. In his first issue, appellant contends that the trial court abused its discretion when it excluded testimony he sought to elicit on cross-examination. In his second issue, appellant complains that the trial court erred by admitting the recording of the call Williams made to 9-1-1.

### A.    Standard of Review

We review a trial court's evidentiary rulings using an abuse of discretion standard. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion unless its decision is outside the zone of reasonable disagreement. *Tienda*, 358 S.W.3d at 638.

### B.    Excluded Testimony

In his first issue, appellant questions "whether the trial court erred when it denied appellant the opportunity to question eyewitness [Bell] regarding her experience with burning people."

At trial, the State offered the testimony of S. Bell, the only eye-witness to the crime. On cross-examination, the defense asked Bell, "This isn't the first time though that someone's been hurt with boiling oil and fish around you, is it?" Bell responded, "Yes, it is." The State then objected. At the bench, the defense

explained why it had asked the question, stating, "Judge, the apartment manager lady that [Bell] just talked about before this lady moved in was checking references and found out two incidents—I'm sorry—two incidences where this lady threw boiling water on someone and another time threw boiling oil on someone." The State responded, "Your honor, I don't see how it's relevant at this point." The trial court sustained the State's relevancy objection. There was no further discussion regarding the line of questioning.

On appeal, appellant asserts that the testimony he sought to elicit from Bell was relevant because it supported his defensive theory that he did not commit the offense. Appellant states, "In questioning [S.] Bell, Appellant was seeking to offer evidence that the only witness to the alleged crime had been previously accused of a similar crime; to wit, throwing boiling water and/or hot oil on a person." Appellant continues, "Said proffered testimony was material as it was addressed to the material proposition that Appellant did not commit the crime. Said testimony was also probative in that it tended to make the existence of the fact that Appellant was not the murderer more probable."

In short, appellant appears to assert that the excluded testimony would have allowed him to argue that it was Bell who threw the gasoline on Vaughn and set him on fire. For this reason, he asserts that it was relevant. *See* TEX. R. EVID. 401. Appellant does not acknowledge that relevant evidence may, nonetheless, be

6

excluded pursuant to Rule of Evidence 403. *See* TEX. R. EVID. 403 (providing, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence").

Alternate perpetrator evidence may be admitted to establish a defendant's innocence by showing that someone else committed the crime. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002). Weak, speculative evidence that another person may have committed the crime is inadmissible and poses a great threat of confusing the issues in a trial. *See id.* at 406–07.

In *Wiley*, the appellant, who was charged with arson, argued that the trial court erred in excluding evidence that a known "fire-starter," who had been ejected a few days earlier from the restaurant that burned, stood across the street watching it burn. *Id.* The appellant asserted that, although this known "fire-starter" did not have the intellectual capacity to "set this sophisticated fire," he may have assisted someone else in starting the fire. *Id.* at 406. The appellant argued that "had the jury been permitted to hear evidence that another person could have committed the offense, they might have entertained a reasonable doubt as to Appellant's guilt." *Id.* at 405.

Holding that the trial court did not err in excluding the evidence under Rule of Evidence 403, the Court of Criminal Appeals stated,

> In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator."

*Id*. at 406.

The *Wiley* court determined that the evidence suggesting another individual started the fire was "both meager and speculative." *Id*. The court concluded that, even if the evidence was marginally relevant, it could not survive the Rule 403 balancing test. *Id*. at 407. The court explained that the probative value of the evidence was slight because it was speculative. *Id*. Further, the evidence "present[ed] a great threat of 'confusion of the issues' because it would have forced the State to attempt to disprove the nebulous allegation" that some other person was involved as an assistant to an unknown arsonist in burning down the restaurant. *Id*. Such evidence would have resulted in a "side trial," turning the jury's focus away from deciding the only issue in the case—whether Wiley had set the fire—and toward speculating whether an individual who was not on trial may have been guilty. *Id*. The court concluded, "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the

8

crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id.*

With these principles in mind, we turn to the record. Error may not be predicated on a ruling that excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. TEX. R. EVID. 103(a)(2). An offer of proof may be in question-and-answer form, or it may be in the form of a concise statement by counsel. *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). A concise statement for this purpose must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible. *Id.* (citing *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993)). An informal bill will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show. *Love*, 861 S.W.2d at 901.

Here, appellant's statement to the trial court informed the court that the evidence appellant sought to elicit pertained to information obtained by Bell's land lady indicating that Bell had thrown boiling water and boiling oil on people. However, no specifics were given to the trial court regarding whether these were simply accusations or rumors or whether the information had been verified in some

9

manner. Appellant gave no description of the circumstances surrounding the alleged incidences, including who was involved and how long ago they occurred.

With such little information regarding the alleged past conduct, the trial court could not have easily determined whether the excluded testimony regarding Bell, as the alleged alternative perpetrator, was sufficient, "on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *See Wiley*, 74 S.W.3d at 406. Given the record, we hold that the trial court did not abuse its discretion in sustaining the State's relevancy objection to appellant's question seeking to establish Bell as an alternate perpetrator.

We overrule appellant's first issue.

## C.    Admission of 9-1-1 Recording

In his second issue, appellant contends that the trial court erred when it admitted the audiotape containing the recording of the 9-1-1 call made by Effron Williams on the day of the incident. The State authenticated the audiotape as a business record through C. Longoria, a custodian of records for the City of Houston Emergency Center. The State did not seek to publish the tape to the jury until it called Williams to testify. Appellant objected on the basis that the tape contained hearsay statements. Appellant did not contend that the tape was not properly authenticated as a business record. *See* TEX. R. EVID 901; *see also*

10

*Montoya v. State*, 43 S.W.3d 568, 571 (Tex. App.—Waco 2001, no pet.) (holding 9-1-1 tape admissible in evidence because was properly authenticated by custodian of records). Rather, as he does on appeal, appellant complained that the following statements by Williams were inadmissible hearsay: (1) Williams's report that he heard appellant say that he burned Vaughn because Vaughn owed him $200 and (2) Williams's statement that he heard appellant say he would burn anyone who told police that he was the one who had burned Vaughn. The trial court overruled appellant's hearsay objections and admitted the audiotape into evidence.

The trial court identified several bases for its ruling. Among those bases was the trial court's conclusion that the statements were not hearsay because they were statements by a party opponent, as defined in Rule of Evidence 801(e)(2). We agree.

A statement is considered non-hearsay as an admission of a party-opponent under Rule 801(e)(2) if it is the party's own statement and it is offered against him. *See* TEX. R. EVID. 801(e)(2); *McNair v. State*, 75 S.W.3d 69, 72 (Tex. App.—San Antonio 2002, no pet.) ("Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."); *see also Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (disavowing any precedent indicating that the statement of a party, when being offered against him, is hearsay). Here, the statements overheard by Williams at the

11

gas station were made by appellant and were offered against him. Thus, the statements were admissions by a party-opponent. *See* 801(e)(2)(A). Appellant has not shown that the trial court abused its discretion when it admitted into evidence the audiotape containing the recording of Williams's call to 9-1-1.

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).