COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

| | § | |
|---|---|---|
| JAIME COVARRUBIAS, | | No. 08-11-00176-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 243rd Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso, Texas |
| Appellee. | § | (TC# 20090D00299) |
| | § | |

## O P I N I O N

Jaime Covarrubias appeals the trial court's judgment convicting him of one count of aggravated sexual assault of A.G., sentencing him to 40 years' imprisonment, and fining him $10,000. In three issues, Appellant contends that the trial court violated his constitutional right to present a complete defense by making certain evidentiary rulings impacting his ability to present his case to the extent and in the form he desired and that these evidentiary rulings were erroneous in and of themselves. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted and tried on two counts of aggravated sexual assault of A.G. and one count of indecency with A.G.[1] At trial, his defensive theory was that A.G.'s uncle, Juan Chaires, was the actual perpetrator and that A.G., who is intellectually disabled, had false memories about the sexual assault and incorrectly attributed to him what Chaires had done to her.

---

[1] After the jury deadlocked on the charges of indecency and aggravated sexual assault by digital penetration, the State dismissed the charges. Accordingly, our recitation of the relevant facts necessary for the disposition of this appeal relate only to the offense for which Appellant was convicted: the aggravated sexual assault of A.G. by penetrating her mouth with his penis.

Appellant attempted to undermine the child's credibility when he called her as a witness during his case-in-chief. Then eleven years old, A.G. testified that when she was eight or nine, she told her mother that Appellant had covered her eyes with a bandana, put Duvalin[2] on his penis, and placed his penis in her mouth. When asked if Appellant was "the only one [who] has done this to you," A.G. replied, "Yes." Defense counsel then asked whether anyone else had done "this" to her, and A.G. testified that "[Appellant] did at first and then [Chaires] did" and that Chaires did so at the same time Appellant assaulted her. After a bench conference at which defense counsel was admonished to ask specific rather than broad questions, A.G. maintained that both Appellant and Chaires placed their "privates" in her mouth.

On cross-examination, the prosecutor used an anatomically correct doll to question A.G. After identifying the penis on the male doll, A.G. demonstrated how she was blindfolded with the bandana and then testified that she tasted candy when Appellant placed his penis in her mouth. She also said that Chaires did not put his penis in her mouth because "[she] pulled [her] head so he could not get it." He then pulled down his pants and exposed his penis, which she touched with her hand when he laid her on top of him. Asked twice by the prosecutor whether she was certain that Appellant was the one who placed his candy-covered penis in her mouth while she was blindfolded, A.G. answered "yes" each time. The trial court subsequently instructed the jury as follows:

> During the testimony of [A.G.], you heard evidence of other extraneous acts of potential sexual abuse that had been perpetrated on [A.G.] at the hands of . . . Chaires. You are instructed that you are to disregard any testimony or evidence regarding past sexual behavior, if any, perpetrated on [A.G.] by . . . Chaires.

In an attempt to further undermine A.G.'s credibility, Appellant pursued two other avenues

---

[2] Duvalin is a Mexican candy cream.

of attack.    First, he sought to have Dr. Carmen Petzold, a psychologist, testify as an expert on false memories.    At the State's request, the trial court held a hearing outside the jury's presence. Dr. Petzold testified it was possible that A.G.'s claim that she was sexually assaulted by Chaires was actually a false memory of Appellant's assault on her.    Dr. Petzold also acknowledged that she could not ascertain which of the assaults was the false memory.    After the hearing, the trial court ruled that Dr. Petzold could testify generally that a child can have false memories for many reasons, including those caused by repeated interviewing in a forensic setting, but she could not testify about her findings concerning A.G., or the child's disability and mental capacity.

Second, Appellant sought to have the videotape of A.G.'s forensic interview admitted into evidence so that he could impeach her with numerous inconsistent statements.    Because he was unable to specifically identify the portions of A.G.'s testimony in the videotape that were inconsistent with her trial testimony, the judge excluded the video.

## RIGHT TO PRESENT A COMPLETE DEFENSE

Appellant first complains that the trial court violated his Sixth Amendment right to present a complete defense because the State did not call A.G. and the forensic interviewer as witnesses during its case-in-chief.    We disagree.

A criminal defendant has a constitutional right to a meaningful opportunity to present a complete defense.    *Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009), *citing Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *see also* U.S. CONST. AMEND. VI, XIV.    The Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."    *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88

3

L.Ed.2d 15 (1985)(per curiam)[Emphasis in original]. Thus, the fact that a defendant was unable to present his case to the extent and in the form he desired does not rise to constitutional error if he was not prevented from presenting the substance of his defense to the jury. *Potier v. State*, 68 S.W.3d 657, 666 (Tex.Crim.App. 2002).

Appellant has failed to establish that the trial court violated his Sixth Amendment right to a meaningful opportunity to present a complete defense. Appellant does not cite, nor can we find, any authority for the proposition that the State was required to call A.G. and the forensic interviewer as witnesses during its case-in-chief. In fact, the State had no obligation to do so. *See Cooper v. California*, 386 U.S. 58, 62 n.2, 87 S.Ct. 788 n.2, 791, 17 L.Ed.2d 730 (1967)("contention . . . that (petitioner) was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify . . . we consider absolutely devoid of merit."); *Chavez v. State*, 508 S.W.2d 384, 386 (Tex.Crim.App. 1974)(holding that a defendant's right to confrontation and cross-examination under Article I, Section 10 of the Texas Constitution is not violated if the State decides not to call the complaining witness to testify); *Shelvin v. State*, 884 S.W.2d 874, 877 (Tex.App.--Austin 1994, pet. ref'd)(holding that, generally, the State is not required to call every conceivable witness with knowledge of the case, as long as the defendant's guilt is proven beyond a reasonable doubt). This is because a defendant's right "to be confronted by the 'witnesses against him' speaks to the right of confrontation that a defendant enjoys, not to the state's burden of production or the number of witnesses required for conviction." *Shelvin*, 884 S.W.2d at 877. "The State has a right to prove its case in any way it may see fit under proper rules and regulations, and a defendant cannot direct either the method or manner of proof." *Id*. "Thus, the State cannot be forced to introduce

any particular evidence in making proof of its case." *Id*. We overrule Issue One.

## EVIDENTIARY RULINGS

In his second and third issues, Appellant complains about several evidentiary rulings. He faults the exclusion of the videotape of A.G.'s forensic interview because it contained numerous inconsistent statements that were admissible for purposes of impeachment. He also argues that exclusion prevented him from adequately cross-examining and confronting A.G. about these inconsistent statements. He next contends that the trial court's instruction to the jury to disregard A.G.'s testimony that she was sexually assaulted by Chaires impermissibly commented on the weight of the evidence and prevented him from presenting his defense of an alternative perpetrator. Finally, Appellant posits that the trial court erroneously limited the scope of Dr. Petzold's testimony by not permitting her to testify about A.G.'s false memories, intellectual disability, and mental capacity.

### *Standard of Review*

We review evidentiary errors for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006)(evidence generally); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000)(expert testimony); *Matchett v. State*, 941 S.W.2d 922, 940 (Tex.Crim.App. 1996)(cross-examination). A trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007).

### *Exclusion of Forensic Interview Videotape*

As we have noted, Appellant argues that the videotape should have been admitted so that he could have impeached her with the numerous inconsistent statements. A "prior inconsistent

5

statement" is a prior statement made by a witness that is inconsistent with that witness's testimony at trial. *See* TEX.R.EVID. 613(a). Rule of Evidence 613(a) permits a party to impeach a witness with a prior inconsistent statement. *See* TEX.R.EVID. 613(a); *Lopez v. State*, 86 S.W.3d 228, 230 (Tex.Crim.App. 2002). To qualify for admission under Rule 613(a), the trial court must be persuaded that the statements are indeed inconsistent. *Lopez*, 86 S.W.3d at 230. Thus, for A.G.'s testimony in her forensic interview to be admitted as a prior inconsistent statement, Appellant was required to establish that A.G.'s prior statements were inconsistent with her trial testimony.

Appellant has failed to so establish. Rather than specifically identify the portions of A.G.'s testimony in the forensic interview that were inconsistent with her trial testimony at trial, Appellant proffered that the entire video should be admitted because, by his count, there were twenty-five inconsistencies "within that tape." The proffer of evidence on this basis – inconsistencies in the forensic interview – was insufficient to establish that A.G.'s statements on the videotape *were inconsistent with her testimony at trial*. Consequently, the trial court's decision to exclude the videotape was not outside the zone of reasonable disagreement. The trial court properly concluded that Rule 613 did not authorize admission of the videotape. *See Lopez*, 86 S.W.3d at 230.

### *Limitation on Expert's Testimony and on Cross-Examination of Victim*

Appellant challenges the limitations imposed by the trial court that (1) prevented him from adequately cross-examining and confronting A.G. by not permitting him to question her about her inconsistent statements, and (2) prevented his expert from testifying about A.G.'s false memories, intellectual disability, and mental capacity. The Sixth Amendment guarantees a defendant the

right to confront the witnesses against him. U.S. CONST. AMEND. VI; *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). The right to cross-examination extends to any matter that could reflect on the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 28-9 (Tex.Crim.App. 1987). The right of an accused to cross-examine a testifying state's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility. *Id.* at 29.

The trial court has broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000). Pursuant to Rule of Evidence 611, which governs the interrogation and presentation of witnesses at trial, the trial court has reasonable discretion to control the mode and order of interrogating witnesses and presenting evidence, including whether to permit a witness to be cross-examined on a matter that is relevant to an issue. *See* TEX.R.EVID. 611(a), (b).

To establish that the trial court erred in excluding evidence and preserve the complaint for appellate review, the proponent must either perfect an offer of proof or a bill of exceptions or demonstrate that the substance of the excluded evidence was apparent from the context within which questions were asked. TEX.R.EVID. 103; *Guidry v. State*, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999). An informal bill will suffice as an offer of proof when it includes a concise statement of what the evidence would show. *Love v. State*, 861 S.W.2d 899, 901

(Tex.Crim.App. 1993). When counsel intends to rely upon an informal bill to preserve error, the bill must include a summary of the proposed evidence. *Id.*

Appellant has failed to preserve his complaints for appellate review. He never made a formal offer of proof as to what questions he would have asked -- and what testimony he would have elicited -- from A.G. and Dr. Petzold had he been permitted to question them as he desired. Likewise, he never summarized what the evidence would have shown had he been permitted to cross-examine A.G. about the inconsistencies in her forensic interview and to question Dr. Petzold regarding A.G.'s false memories, intellectual disability, and mental capacity. Defense counsel's comments that he counted twenty-five inconsistencies in A.G.'s forensic interview and that they are "indications of [A.G.'s] inability to hold a memory and accurately recount [it]" do not constitute a formal offer of proof or an informal bill because they do not reveal the substance of the excluded evidence. Without an offer of proof or informal bill, we cannot conduct a proper harm analysis.

### *Instruction to Jury to Disregard Victim's Testimony*

Appellant next argues that the trial court's instruction to disregard A.G.'s testimony that she had been sexually assaulted by Chaires impermissibly commented on the weight of the evidence and denied him the right to present his defense that an alternative perpetrator committed the charged offense. Evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense.[3] *Potier v. State*, 68 S.W.3d 657, 659

---

[3] As established above, evidentiary rulings are ordinarily reviewed for abuse of discretion. *See Shuffield*, 189 S.W.3d at 793. There is a split of authority, however, on whether that standard is appropriate when the right to present a complete defense is implicated. Some intermediate appellate courts have applied a *de novo* standard of review in such cases. *See e.g., Campos v. State*, 186 S.W.3d 93, 96 (Tex.App.--Houston [1st Dist.] 2005, no pet.); *Wilson v. State*, 151 S.W.3d 694, 697 (Tex.App.--Fort Worth 2004, pet. ref'd); *Muttoni v. State*, 25 S.W.3d 300, 304 (Tex.App.--Austin 2000, no pet.). The Court of Criminal Appeals, on the other hand, has applied an abuse-of-discretion standard. *See Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001). Here, neither

(Tex.Crim.App. 2002). A trial court's ruling excluding evidence may rise to the level of a constitutional violation if the ruling excludes otherwise relevant and reliable evidence that "'forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.'" *Wiley v. State*, 74 S.W.3d 399, 405 (Tex.Crim.App. 2002). Regarding "alternative perpetrator evidence," a defendant has the right to attempt to establish his innocence by showing that someone else committed the crime. *Id*. at 406. To do so, he must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator." *Id*.

Article 38.05 of the Code of Criminal Procedure statutorily prohibits a judge from commenting on the weight of the evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 38.05 (West 1979). To constitute reversible error, the comment must be reasonably calculated to benefit the State or to prejudice the rights of the defendant. *Becknell v. State*, 720 S.W.2d 526, 531(Tex.Crim.App. 1996).

Appellant has not shown a nexus between the crimes charged and the alleged "alternative perpetrator." Appellant was tried for the aggravated sexual assaults of A.G. by penetrating her vagina with his finger and by penetrating her mouth with his penis. Although A.G. testified on direct examination that Chaires put his penis in her mouth, she testified on cross that Chaires did not in fact do so, but rather pulled down his pants and exposed his penis, which she then touched with her hand when he laid her on top of him. Significantly, A.G. never recanted her allegation

---

Appellant nor the State argues for *de novo* review of the trial court's decision to instruct the jury to disregard A.G.'s testimony that she had been sexually assaulted by Chaires. In their briefs, both parties posit that the appropriate standard of review for evidentiary rulings is abuse of discretion. Since neither party raised the issue of whether a different standard of review applies, we need not address it.

that Appellant sexually assaulted her and was adamant on cross that Appellant did so by covering her eyes with a bandana and placing his penis in her mouth. Moreover, Appellant did not adduce any evidence excluding him as a perpetrator. Even if the evidence tended to show that Chaires assaulted A.G., the evidence cannot be used to infer that Appellant did not abuse A.G. in the particular incidents charged. *See Ruiz v. State*, 272 S.W.3d 819, 830 (Tex.App.--Austin 2008, no pet.)(noting that even if alleged alternative perpetrator had abused child, "that would not bear on whether appellant also abused her."). Accordingly, the excluded testimony was not sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crimes charged and Chaires. *See Wiley*, 74 S.W.3d at 406. Without the required nexus, the evidence did not support Appellant's alternative perpetrator defense, and the trial court did not abuse its discretion by instructing the jury to disregard A.G.'s testimony.

Likewise, Appellant has failed to establish that the trial court's instruction to the jury to disregard A.G.'s testimony that she had been sexually assaulted by Chaires was a comment on the weight of the evidence. As established above, when the trial court instructed the jury to disregard, it did so without making any additional comment. The trial court was merely informing the jury of its ruling. The information imparted to the jury was value-neutral and was not reasonably calculated to benefit the State or prejudice Appellant. *See Rosales v. State*, 932 S.W.2d 530, 538 (Tex.App.--Tyler 1995, pet. ref'd)(holding that trial court's *sua sponte* instruction to the jury to disregard certain defense testimony regarding appellant's cooperation with authorities was not a comment on the weight of the evidence, but rather, a value-neutral verbalization to the jury of its ruling). Appellant has not shown that the trial court abused its discretion by instructing the jury to disregard A.G.'s testimony. We overrule Issues Two and Three and affirm the judgment of the

10

trial court.

February 13, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J. (Not Participating)

(Do Not Publish)